UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

IN RE CHRISTIE'S DATA BREACH LITIGATION

No. 24-CV-4221 (JMF)

*This Document Relates To:*
*All Member Cases*

CLASS ACTION

-------------------------------------------------------------------x

## **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

I.      INTRODUCTION ............................................................................................................... 1

II.     STATEMENT OF FACTS ................................................................................................... 2

     A.   Background ...................................................................................................................... 2

     B.   Procedural History .......................................................................................................... 3

III.    SETTLEMENT TERMS ...................................................................................................... 4

     A.   The Settlement Class ...................................................................................................... 4

     B.   Settlement Benefits ......................................................................................................... 5

        1.   Documented Monetary Losses .................................................................................. 6

        2.   Pro Rata Cash Payments .......................................................................................... 6

        3.   Credit Monitoring ...................................................................................................... 6

        4.   Injunctive Relief......................................................................................................... 6

     C.   Settlement Administration .............................................................................................. 7

     D.   Notice to Class Members ................................................................................................ 7

     E.   Opt-Outs.......................................................................................................................... 8

     F.   Objections ....................................................................................................................... 8

     G.   Attorneys' Fees and Service Awards .............................................................................. 9

     H.   Release of Claims ........................................................................................................... 9

IV.     LEGAL STANDARD........................................................................................................... 9

V.      ARGUMENT ...................................................................................................................... 10

     A.   The Settlement Satisfies the Criteria for Preliminary Approval. ..................................... 11

        1.   The Plaintiffs and Class Counsel adequately represented the Class............................ 12

2.    The Settlement is the product of arm's-length negotiations. ......................................... 12

3.    The Settlement provides adequate relief to Class Members. ....................................... 13

4.    The Settlement provides equitable treatment to Class Members. ............................... 15

5.    The *Grinnell* factors support preliminary approval. ..................................................... 15

B.    The Proposed Settlement Class Meets the Requirements of Rule 23. ............................. 17

1.    The Class is sufficiently numerous. ...................................................................... 18

2.    Questions of law and fact are common to the Class. .................................................... 18

3.    Plaintiffs' claims and defenses are typical. ................................................................. 19

4.    Plaintiffs will provide fair and adequate representation. .............................................. 19

C.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3). .................... 20

1.    Common questions of law and fact predominate. ......................................................... 20

2.    Class action treatment is superior to other methods. .................................................... 21

D.    The Court Should Approve the Proposed Notice Plan. ..................................................... 22

E.    The Court Should Appoint the Settlement Administrator. ................................................ 23

F.    The Court Should Appoint the Class Representatives. ...................................................... 23

G.    The Court Should Appoint Class Counsel. ....................................................................... 24

VI.    CONCLUSION ...................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alcantara v. CNA Mgmt., Inc.*,
    264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) .................................................................................. 18

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)*) ............................................................................................................ 19

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ............................................................................................................... 20

*Attias v. Carefirst, Inc.*,
    344 F.R.D. 38 (D.D.C. 2023) ................................................................................................. 22

*Beasley v. TTEC Servs. Corp.*,
    Civil Action No. 22-cv-00097, 2023 U.S. Dist. LEXIS 81211 (D. Colo. May 9, 2023) .... 19, 21

*Bowdle v. King's Seafood Co., LLC*,
    No. SACV 21-01784, 2022 U.S. Dist. LEXIS 240383 (C.D. Cal. Oct. 19, 2022) .................. 22

*Castagna v. Madison Square Garden, L.P.*,
    No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ...................... 12, 16

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) .................................................................................... 23

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................................ 11, 15, 17

*Corra v. ACTS Ret. Servs.*,
    No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024) ......................................... 13

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 13

*Frank v. Eastman Kodak Co*.,
    228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................................... 17

*Freeland v. AT & T Corp*.,
    238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) .............................................................................. 18

*Grissom v. Sterling Infosystems, Inc.*,
    No. 20-CV-7948, 2024 U.S. Dist. LEXIS 197927, (S.D.N.Y. Oct. 30, 2024) ................. passim

*Hammond v. Bank of N.Y. Mellon Corp.*,
  No. 08-cv-6060, 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ............................ 14

*Hapka v. Carecentrix, Inc*.,
  No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018).......................... 21

*In re Austrian & German Bank Holocaust Litig*.,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................................................... 17

*In re Canon United States Data Breach Litig*.,
  No. 20-CV-6239, 2023 U.S. Dist. LEXIS 206513, (E.D.N.Y. Nov. 15, 2023)....................... 13

*In re Capital One Consumer Data Sec. Breach Litig*.,
  No. 1:19-md-2915, 2022 U.S. Dist. LEXIS 234943 (E.D. Va. Sep. 13, 2022)........................ 19

*In re Currency Conversion Fee Antitrust Litig*.,
  No. 01-MD-1409, M-21-95, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006)............ 11

*In re GE/CBPS Data Breach Litig*.,
  No. 20-cv-2903, 2023 U.S. Dist. LEXIS 53171 (S.D.N.Y. Mar. 28, 2023)............................. 16

*In re Luxottica Group Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................ 10

*In re Nasdaq Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................................. 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*.,
  330 F.R.D. 11 (E.D.N.Y. 2019).............................................................................................. 11

*In re Sonic Corp. Customer Data Breach Litig*.,
  No. 1:17-md-02807, 2020 U.S. Dist. LEXIS 204169 (N.D. Ohio Nov. 2, 2020) ................... 21

*In re Target Corp. Customer Data Sec. Breach Litig*.,
  309 F.R.D. 482 (D. Minn. 2015)....................................................................................... 19, 21

*In re TJX Cos. Retail Sec. Breach Litig*.,
  246 F.R.D. 389 (D. Mass. 2007)............................................................................................. 14

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014).............................................................................. 18

*Kostka v. Dickey's Barbecue Rests., Inc*.,
  No. 3:20-cv-03424, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022)..................... 21

*Lowe v. NBT Bank,*
  No. 3:19-CV-1400, 2022 U.S. Dist. LEXIS 180182 (N.D.N.Y. Sep. 30, 2022) ............... 15, 24

*McMahon v. Olivier Cheng Catering & Events, LLC,*
  2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ........................................................ 13

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ................................................................................................................ 23

*Pearlstein v. Blackberry Ltd.,*
  2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. Sep. 29, 2022) ...................................................... 13

*Thomsen v. Morley Co., Inc.,*
  No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703 (E.D. Mich. Nov. 4, 2022) ......... 19, 20, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ................................................................................................ 10, 18

*Yuzary v. HSBC Bank USA, N.A,*
  No. 12-CV-3693, 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. Apr. 30, 2013) ........................... 11

## RULES

Fed. R. Civ. P. 12(b)(1) ...................................................................................................................... 3

Fed. R. Civ. P. 23 ......................................................................................................................... 1, 24

Fed. R. Civ. P. 23(a) ........................................................................................................................ 17

Fed. R. Civ. P. 23(a)(1)-(4) ............................................................................................................. 17

Fed. R. Civ. P. 23(a)(1) .............................................................................................................. 17, 18

Fed. R. Civ. P. 23(a)(2) .............................................................................................................. 17, 18

Fed. R. Civ. P. 23(a)(3) .............................................................................................................. 17, 19

Fed. R. Civ. P. 23(a)(4) .............................................................................................................. 17, 19

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 17, 18, 20, 21

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................... 22, 23

Fed. R. Civ. P. 23(e) ............................................................................................................. 9, 10, 23

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................... 22

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii) ............................................................................ 11

Fed. R. Civ. P. 23(e)(2) .................................................................................... 10, 11

Fed. R. Civ. P. 23(e)(2)(A)-(D) ............................................................................... 11

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................... 11, 13

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................... 11, 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) .......................................................................... 11, 14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................... 11, 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................................... 11, 15

Fed. R. Civ. P. 23(e)(2)(D) .............................................................................. 11, 15

Fed. R. Civ. P. 23(e)(3) .................................................................................... 13, 15

Fed. R. Civ. P. 23(g) .............................................................................................. 24

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ............................................................................ 24

Fed. R. Civ. P. 23(g)(1)(B) ..................................................................................... 24

Fed. R. Civ. P. 56 .................................................................................................. 14

**OTHER AUTHORITIES**

*Newberg on Class Actions*, § 11.22 (3d ed. 1992) ........................................................ 9

*Newberg on Class Actions*, § 11.27 (3d ed. 1992) ........................................................ 9

*Newburg on Class Actions,* § 11.53 (4th ed. 2002) ..................................................... 10

## I.    INTRODUCTION

Plaintiffs Efstathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23. This case arises out of the data breach (the "Data Breach") that was discovered by Defendant Christie's Inc. ("Defendant" or "Christie's") on or around May 8, 2024. After several weeks of arm's-length negotiations and an October 30, 2024, mediation session with Jill R. Sperber, Esq.—where the key terms were finalized—Plaintiffs and Defendant reached the Settlement Agreement (the "Settlement" or "S.A.") attached as **Exhibit 1**.

The Settlement provides timely and excellent benefits to the Settlement Class.[1] Defendant will establish a non-reversionary common fund of $990,000.00 (the "Settlement Fund") from which each Settlement Class Member can claim up to $10,000.00 for documented monetary losses, two years of three-bureau Credit Monitoring (which includes dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services), and also a pro rata cash payment (estimated to be $100). Additionally, California Settlement Class Members can claim an additional $100.00 cash payment (subject to *pro rata* decrease) for their potential statutory claims. Furthermore, the Settlement Fund will pay for Plaintiffs' Service Awards, attorneys' fees, litigation expenses, and the costs of Settlement Administration. The Settlement also provides sweeping injunctive relief whereby Defendant agrees to implement enhanced data security measures (to the extent not already adopted)—including automated vulnerability scanning tools, enhanced existing firewall protections, enhanced existing multi-factor authentication

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement.

processes, and improved employee training programs. Critically, Defendant will pay for these data security measures **_separate and apart_** from all other settlement benefits.

The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this Circuit and elsewhere. After all, the Settlement provides the exact relief sought by the lawsuit (i.e., both monetary and injunctive relief). Thus, Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the settlement described in the "Settlement Agreement" between Plaintiffs and Christie's; (2) preliminarily certifying the Settlement Class for purposes of Settlement; (3) appointing Plaintiffs Efstathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin as Class Representatives; (4) appointing David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC and Jonathan Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C. as Class Counsel; (5) approving the notice plan set forth in the Settlement Agreement; (6) appointing Eisner Advisory Group, LLC ("EAG") as Settlement Administrator; (7) approving the form and content of the Short Form Notice (S.A. Ex. A), Long Form Notice (S.A. Ex. B), and Claim Form (S.A. Ex. C); and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

## II.    STATEMENT OF FACTS

### A. Background

Defendant Christie's Inc. is an international auction house that operates in the global art and luxury market and is known for hosting auctions and private sales. S.A. ¶ 1. As part of its business, Defendant collects and maintains the private information of its customers and prospective customers—including their names, addresses, dates of birth, nationality information,

passport numbers, and driver's licenses or state identification numbers. *Id*. ¶ 2. On or around May 8, 2024, Defendant discovered suspicious activity on its computer network (the "Data Breach"). *Id*. ¶ 3. Defendant further determined that certain Private Information of its customers and prospective customers had been unlawfully accessed and exfiltrated. *Id*. Thereafter, on or around May 30, 2024, Defendant began notifying individuals who may have been impacted by the Data Breach. *Id*. ¶ 4.

### B. Procedural History

On June 3, 2024, Defendant was named in the first of five putative class actions relating to the Data Breach. *Id*. ¶ 5. Thereafter, the Court consolidated the putative class actions into the first-filed action. *Id*. ¶ 6. And on July 26, 2024, Plaintiffs filed a Motion to Appoint David Lietz and Jon Mann as Co-Lead Counsel and Raina Borrelli, Courtney Maccarone, and Jeff Ostrow to an Executive Committee. *Id*. ¶ 7. The motion was granted on July 29, 2024. *Id*.

On August 19, 2024, Plaintiffs filed their Consolidated Class Action Complaint. *Id*. ¶ 8. Therein, Plaintiffs pleaded a Nationwide Class, an Alabama Subclass, a Florida Subclass, a Pennsylvania Subclass, and a Texas Subclass. Doc. 38, ¶¶ 156–60. Plaintiffs brought claims for negligence, breach of implied contract, unjust enrichment, violation of the New York Deceptive Trade Practices Act, declaratory judgment, negligence *per se*, invasion of privacy, violation of the Florida Deceptive and Unfair Trade Practices Act, and wantonness. *Id*. ¶¶ 171–294. On September 16, 2024, Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) . Doc. 41. Thereafter, on October 7, 2024, Plaintiffs filed a First Amended Consolidated Class Action Complaint. Doc. 43. And on October 28, 2024, Defendant filed a second Motion to Dismiss. Doc. 45.

Recognizing the benefits of early resolution, the Parties began discussing the possibility of settlement in or around the beginning of October 2024. S.A. ¶ 10. The Parties scheduled a mediation session with Jill R. Sperber, Esq., who has substantial experience in mediating data breach class actions. *Id*. Prior to mediation, the Parties engaged in informal discovery and exchanged mediation briefs—which enabled the Parties to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. *Id*. ¶ 11.

On October 30, 2024, the Parties engaged in a full-day mediation session with Ms. Sperber. *Id*. Under her guidance, the Parties engaged in hours of hard-fought negotiations and ultimately agreed upon the material terms of the Settlement. *Id*. ¶ 12. Thereafter, on November 1, 2024, the Parties executed a Term Sheet. *Id*. And on November 15, 2024, the Parties filed a Joint Notice of Settlement and Motion to Stay All Deadlines. Doc. 47. On November 18, 2024, the Court granted the Motion and stayed all deadlines pending the filing of Plaintiffs' Motion for Preliminary Approval. Doc. 48. In the weeks that followed, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying draft notices, Claim Form, and other exhibits, and agreed upon a Settlement Administrator. Joint Declaration in Support of Plaintiffs' Motion ("Joint Declaration") ¶ 4, attached hereto as **Exhibit 2**.

## III.    SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of a Settlement Class defined as: all persons residing in the United States whose Private Information was compromised as a result of the Data Breach and who were sent notice of the Data Breach. S.A. ¶ 62. All members of the Settlement Class that do not opt-out of the settlement shall be referred to as "Settlement Class Members." *Id*. ¶ 63. Excluded from the Settlement Class are: (a) all persons who are governing board members

of the Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff. *Id*. ¶ 62. "Private Information" means Settlement Class Members' information that may have been accessible in the Data Breach, which may include full names, dates of birth, addresses, birthplaces, sex, nationality, document numbers, passport numbers, full Machine Readable Zone ("MRZ") numbers (the machine-readable code at the bottom of the identity page at the beginning of a passport, IDs, and visas), issuing authority, issue dates, expiration dates, and driver's license numbers. *Id*. ¶ 52. There are approximately 45,798 individuals in the Settlement Class. Joint Decl. ¶ 5.

### B. Settlement Benefits

The Settlement provides Class Members with timely benefits targeted at remediating the specific harms they may have suffered because of the Data Breach. S.A. ¶¶ 71–73. The Settlement establishes a non-reversionary common fund of nine-hundred and ninety thousand dollars ($990,000.00). *Id*. ¶ 67. Under the Settlement, Settlement Class Members can obtain (1) cash compensation for documented monetary losses up to $10,000.00 per Settlement Class Member, (2) pro rata cash payments (estimated at $100.00), and (3) credit monitoring and identity theft restoration services. *Id*. ¶ 71. California Settlement Class Members can obtain an additional pro rata cash payment of $100.00 given their potential statutory claims under the California Consumer Privacy Act. *Id*. Critically, these forms of relief are ***not mutually exclusive*** (e.g., a Settlement Class Member may claim cash compensation for monetary losses and a pro rata cash payment and credit monitoring). *Id*. Furthermore, the Settlement provides injunctive relief as detailed below. *Id*. ¶ 73.

### 1. Documented Monetary Losses

Settlement Class Members can obtain up to $10,000.00 per person for documented monetary losses reasonably related to the Data Breach or to mitigating the effects of the Data Breach. *Id*. ¶ 71(a). For example, Settlement Class Members can obtain up to $10,000.00 per person for, *inter alia*, (i) out of pocket credit monitoring costs that were incurred on or after May 8, 2024, through the date of Claim submission; (ii) unreimbursed losses associated with actual fraud or identity theft; and (iii) unreimbursed bank fees, long distance phone charges, postage, or gasoline for local travel. *Id*.

### 2. Pro Rata Cash Payments

Settlement Class Members can also obtain a pro rata cash payment in the estimated amount of $100.00. *Id*. ¶ 71(b). The precise value of the pro rata cash payments will be adjusted upwards or downwards based upon the number of valid claims filed and the funds remaining in the Settlement Fund. *Id*. California Settlement Class Members can obtain an additional cash payment of $100.00 (a "California Statutory Payment") given their potential statutory claims under the California Consumer Privacy Act. *Id*. ¶ 71(c).

### 3. Credit Monitoring

Settlement Class Members can also obtain two years of three-bureau Credit Monitoring that also includes three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. *Id*. ¶ 71(d).

### 4. Injunctive Relief

The Settlement also provides  injunctive relief whereby Defendant agrees to implement enhanced data security measures to the extent not already done. *Id*. ¶ 73. Specifically, the Settlement mandates that Defendant (a) periodically review and revise its policies and procedures

addressing data security as reasonably necessary; (b) implement automated vulnerability scanning tools that cover its systems and will set policies for prompt remediation; (c) enhance existing firewall protections; (d) enhance existing multi-factor authentication processes for remote access; (e) verify that all default passwords are changed to follow password policies that comply with best practices; and (f) maintain a program to educate and train its employees on the importance of the privacy and security of Private Information. *Id*. Critically, Defendant will pay for these enhanced data security measures separate and apart from other benefits under the Settlement. *Id*.

### C.  Settlement Administration

The Parties agreed that EAG will serve as the Settlement Administrator to process all claims, subject to approval by the Court. *Id*. ¶ 76. The Settlement Administrator will, *inter alia*, complete the Notice Program, review Claim Forms, establish and maintain the Settlement Fund, establish and maintain a post office box to receive opt-out requests and objections and Claim Forms, establish and maintain the Settlement Website, establish and maintain an automated toll-free telephone line for Settlement Class Members with questions, process physical and electronic Claim Forms, disperse cash benefits, notify Settlement Class Members of deficient claims, process opt-out requests, process objections, provide weekly reports to Class Counsel and Defendant's Counsel, and prepare a declaration confirming the Notice Program was completed in accordance with the Settlement Agreement. *Id*. ¶ 78.

### D.  Notice to Class Members

Within ten (10) days after the entry of the Preliminary Approval Order, Defendant shall provide the Class List to the Settlement Administrator. *Id*. ¶ 80. Notice will be provided via both: (1) direct notice via U.S. Mail, and (2) notice on the Settlement Website. *Id*. ¶ 81. Within thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator will

disseminate direct notice—via U.S. mail—to the Class Members. *Id.* Thereafter, the Settlement Administrator will establish the Settlement Website no later than the day before direct notice begins. *Id*. ¶ 83. Additionally, the Settlement Administrator will perform address tracing for those Postcard Notices that are returned as undeliverable and then re-mail notice when new addresses are found. *Id*. ¶ 89.

### E. Opt-Outs

Settlement Class Members may opt-out from receiving the benefits of the Settlement. *Id*. ¶¶ 84–86. Both the Postcard Notice and Long Form Notice will inform Settlement Class Members of their rights to opt-out of the Settlement. *Id*. ¶¶ 82–84. To opt-out of the Settlement, opt-out requests must be postmarked no later than the last day of the Opt-Out Period—which the Parties recommend to be sixty (60) days after the Notice Commencement Deadline. *Id*. ¶¶ 46, 84, 112. To be valid, the opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id*. ¶ 84.

### F. Objections

Settlement Class Members may object by mailing their objections to the Settlement Administrator or by filing their objections with the Court. *Id*. ¶ 87. To be valid, objections must be submitted by the Objection Deadline—which the Parties recommend to be sixty (60) days after the Notice Commencement Deadline. *Id*. ¶¶ 45, 87. An objection must: (a) state the objector's full name, mailing address, telephone number, and email address (if any); (b) indicate the case name and number; (c) provide documentation sufficient to establish membership in the Settlement Class (e.g., a copy of the Postcard Notice); (d) state the objector's position; (e) copies of other documents (if any); (f) whether the objector intends to attend the Final Approval Hearing; (g) whether the

objector is represented by a lawyer and, if so, the name, address, and telephone number of that lawyer; and (h) the objector's signature. *Id*. ¶ 88.

### G. Attorneys' Fees and Service Awards

The Parties did not negotiate attorneys' fees, costs, and Service Awards until after all material terms of the Settlement were agreed upon. *Id*. ¶ 108. In doing so, Class Counsel and Plaintiffs avoided conflicts with the Settlement Class. Joint Decl. ¶ 6. Thus, Class Counsel will file for an award of attorneys' fees up to one third (approximately 33.33%) of the Settlement Fund and reimbursement of reasonable litigation expenses. S.A. ¶ 107. Additionally, Class Counsel will request Service Awards of $5,000.00 for each Class Representative. *Id*. ¶ 106. These Service Awards are intended to reimburse Class Representatives for their efforts and in recognition of their dedication to the Settlement Class. Joint Decl. ¶ 7.

### H. Release of Claims

The Parties tailored the release to affect only those claims related to the Data Breach— defined as "Released Claims" in the Settlement Agreement. S.A. ¶¶ 110–15. Thus, any Settlement Class Members, who do not exclude themselves, will release all of their claims against Defendant related to the Data Breach. *Id*.

## IV.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the settlement class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992).In weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the

court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e). As such, after preliminary approval is granted, notice is provided to settlement class members (who are then given the opportunity to exclude themselves from or object to the settlement). *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). At the Final Fairness Hearing, Settlement Class Members may be heard by the Court prior to its determination of whether to grant final approval of the settlement agreement and dismiss the case. *Id.*

## V.    ARGUMENT

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *Grissom v. Sterling Infosystems, Inc.*, No. 20-CV-7948, 2024 U.S. Dist. LEXIS 197927, at *5 (S.D.N.Y. Oct. 30, 2024). Indeed, "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, *Newburg on Class Actions* § 11:53, at 167 (4th ed. 2002))). In particular, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Here, Plaintiffs seek to certify, for settlement purposes, the Settlement Class which is defined as "all persons residing in the United States whose Private Information was compromised as a result of the Data Breach and who were sent notice of the Data Breach." S.A. ¶ 62. There are

approximately 45,798 individuals in the Settlement Class. Joint Decl. ¶ 5. For the reasons explained *infra*, the Court should grant preliminary approval. *See also Grissom*, 2024 U.S. Dist. LEXIS 197927, at *6 (S.D.N.Y. Oct. 30, 2024) ("The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle.") (citing *Yuzary v. HSBC Bank USA, N.A*, No. 12-CV-3693, 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. Apr. 30, 2013)).

### A.  The Settlement Satisfies the Criteria for Preliminary Approval.

The Settlement satisfies the criteria for preliminary approval because the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *6 (S.D.N.Y. Oct. 30, 2024) (quoting *In re Currency Conversion Fee Antitrust Litig*., No. 01-MD-1409, M-21-95, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006)). Therein, courts consider "the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *Id*. (citing Fed. R. Civ. P. 23(e)(2) (A)-(D)). Besides these four factors, courts within the Second Circuit also consider the nine factors established in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"). However, there is some partial overlap between the factors (and courts often analyze them together). *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *7 (S.D.N.Y. Oct. 30, 2024).

**1.  The Plaintiffs and Class Counsel adequately represented the Class.**

Under Rule 23(e)(2)(A), courts consider whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). Here, the Class Representatives adequately represented the Settlement Class by assisting in the investigation of the case, reviewing the complaints, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering Class Counsel's many questions. Joint Decl. ¶ 8. Furthermore, the Class Representatives do not have any conflicts with the Class. *Id*.

Class Counsel adequately represented the Settlement Class—by utilizing their extensive experience in class action litigation and complex data breach cases—to secure a substantial settlement and provide timely relief. Joint Decl. ¶ 9. Moreover, Class Counsel secured an early and substantial settlement which benefits the Settlement Class. *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218, at *30 (S.D.N.Y. June 7, 2011) (commending class counsel for having "participated in a full-day mediation and ultimately negotiated an excellent settlement early in the litigation thus saving hundreds of hours of legal time that would have increased their fees"). Thus, this factor weighs toward preliminary approval.

**2.  The Settlement is the product of arm's-length negotiations.**

Under Rule 23(e)(2)(B), courts consider whether "the proposal was negotiated at arm's lengths[.]" Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was the product of arm's-length negotiations whereby the Parties engaged in full-day mediation session with Jill R. Sperber, Esq., who has substantial experience in mediating data breach class actions. S.A. ¶ 10. Under her guidance, the Parties engaged in hours of hard-fought, contentious negotiations and ultimately agreed upon the material terms of the Settlement. *Id*. ¶ 12. This factor supports preliminary

approval. *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *10-11 (S.D.N.Y. Mar. 2, 2010) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process."); *Pearlstein v. Blackberry Ltd*., 2022 U.S. Dist. LEXIS 177786, at *21 (S.D.N.Y. Sep. 29, 2022) (explaining that the "involvement of an experienced mediator 'helps to ensure that the proceedings were free of collusion and undue pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

### 3.  The Settlement provides adequate relief to Class Members.

Under Rule 23(e)(2)(C), courts consider four factors when considering the adequacy of the relief: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). On balance, these factors weigh toward preliminary approval. After all, the Settlement provides relief and terms comparable to other recent court-approved data breach settlements. *See, e.g., Corra v. ACTS Ret. Servs.,* No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024) (granting preliminary approval of a data breach settlement of 20,754 people with a $350,000 cap providing up to $3,500 for extraordinary losses, $350 in ordinary out-of-pocket losses, $75 in lost time, and two years of credit monitoring); *In re Canon United States Data Breach Litig*., No. 20-CV-6239, 2023 U.S. Dist. LEXIS 206513, at *13 (E.D.N.Y. Nov. 15, 2023) (granting preliminary approval of a data breach settlement that provided up to $7,500 for extraordinary losses, $300 in ordinary out-of-pocket losses, and two years of credit monitoring services).

*First*, the relief is adequate because "the costs, risks, and delay of trial and appeal" are substantial. Fed. R. Civ. P. 23(e)(2)(C)(i); Joint Decl. ¶ 10. While Plaintiffs strongly believe in the merits of their case, Plaintiffs also recognize that Defendant asserted numerous, and potentially dispositive, defenses. Joint Decl. ¶ 10. Given these risks, and the risks posed by data breach litigation in particular, the Settlement provides relief that is both timely and substantial. *Id.*; *see also Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060, 2010 U.S. Dist. LEXIS 71996, at *4 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify a data breach class action).

*Second*, the relief is adequate because the "proposed method of distributing relief" is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii); Joint Decl. ¶ 11. EAG will, *inter alia*, complete the Notice Program, review Claim Forms, establish and maintain the Settlement Fund, establish and maintain a post office box to receive Claim Forms, establish and maintain the Settlement Website, establish and maintain an automated toll-free telephone line for Settlement Class Members with questions, process physical and electronic Claim Forms, disperse cash benefits, and notify Settlement Class Members of deficient claims. S.A. ¶ 78.

*Third*, the relief is adequate because the "terms of any proposed award of attorneys' fees" are reasonable. Fed. R. Civ. P. 23(e)(2)(C)(iii); Joint Decl. ¶ 12. Here, the Parties did not negotiate attorneys' fees, costs, and Service Awards until after all material terms of the Settlement were agreed upon. S.A. ¶ 108. In doing so, Class Counsel and Plaintiffs avoided conflicts with the Settlement Class. Joint Decl. ¶ 6. Thus, Class Counsel will file for an award of attorneys' fees up to one third (approximately 33.33%) of the Settlement Fund and reimbursement of reasonable litigation expenses. S.A. ¶ 107. This request aligns with those approved in the Second Circuit.

*Lowe v. NBT Bank*, No. 3:19-CV-1400, 2022 U.S. Dist. LEXIS 180182, at *30-31 (N.D.N.Y. Sep. 30, 2022) (collecting cases and explaining that an award of 33.33% "is a reasonable baseline").

**Fourth**, there is no "agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv); Joint Decl. ¶ 13. Thus, on balance, these four factors weigh toward preliminary approval.

### 4.  The Settlement provides equitable treatment to Class Members.

Under Rule 23(e)(2)(D), courts consider whether "the proposal treats class members equitably relative to each other[.]" Fed. R. Civ. P. 23(e)(2)(D). Each Settlement Class Member will be given equal opportunity to submit claims and obtain the compensation to which they are entitled. S.A. ¶¶ 76–79. Thus, this factor weighs in support of preliminary approval.

### 5.  The *Grinnell* factors support preliminary approval.

Preliminary approval also is supported by the nine *Grinnell* factors which are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *7 n.2 (S.D.N.Y. Oct. 30, 2024) (citing *Grinnell*, 495 F.2d at 463). On balance, these factors weigh toward preliminary approval.

**First**, "the complexity, expense and likely duration of the litigation" are substantial. Joint Decl. ¶ 14. Indeed, Plaintiffs would likely need to gain and maintain class certification, prevail on summary judgment, win at trial, and prevail on appeal. *Id*. Additionally, the amount of data-expert

analysis and testimony needed to bring this data breach case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. *Id*. Thus, this factor weighs toward preliminary approval.

**Second**, "the reaction of the class to the settlement" is currently unknown. Joint Decl. ¶ 15. While the Class Representatives have reviewed and approved the Settlement Agreement, other Class Members have not yet had that opportunity to voice their opinions. *Id*. Thus, this factor is neutral.

**Third**, regarding "the stage of the proceedings and the amount of discovery completed[,]" Plaintiffs filed individual Complaints, a Consolidated Complaint, a First Amended Consolidated Complaint, and Defendant filed two Motions to Dismiss. *See* Docs. 1, 38, 40, 41, 43, 44, 45. Additionally, prior to mediation, the Parties engaged in informal discovery and exchanged mediation briefs—which enabled the Parties to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. S.A. ¶ 11. On balance, this factor slightly weighs toward preliminary approval. *See Castagna*, 2011 U.S. Dist. LEXIS 64218, at *30 (S.D.N.Y. June 7, 2011) (commending class counsel for having "negotiated an excellent settlement early in the litigation thus saving hundreds of hours of legal time").

**Fourth**, **fifth, and sixth**, the risk of establishing liability, damages, and maintaining the class action throughout trial are all substantial. Joint Decl. ¶ 16. Thus, this factor weighs toward preliminary approval. *See In re GE/CBPS Data Breach Litig*., No. 20-cv-2903, 2023 U.S. Dist. LEXIS 53171, at *5 (S.D.N.Y. Mar. 28, 2023) (considering these factors in a data breach class action and granting final approval).

**Seventh**, Defendant's ability to withstand a greater judgment is not at issue here. Joint Decl. ¶ 17. Moreover, "ability to withstand a greater judgment, standing alone, does not suggest

that the settlement is unfair[.]" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000)). Thus, this factor is neutral.

**Eighth and ninth**, the Settlement is reasonable in light of the best possible recovery and the attendant risks of litigation. Joint Decl. ¶ 18. As discussed above, the Settlement establishes a non-reversionary common fund of $990,000.00 from which Settlement Class Members can obtain (1) cash compensation for documented monetary losses up to $10,000.00 per Settlement Class Member, (2) pro rata cash payments in the estimated amount of $100.00, (3) an additional $100.00 cash payment for California residents, and (4) credit monitoring and identity theft restoration services. S.A. ¶¶ 67, 71. Furthermore, the Settlement provides substantial injunctive relief. *Id*. ¶ 73. While Plaintiffs strongly believe in the merits of their case, Plaintiffs also recognize that Defendant raised numerous, and potentially dispositive, defenses. Joint Decl. ¶ 18. Given these risks, and the risks posed by data breach litigation in particular, the Settlement provides relief that is both timely and substantial. *Id*. Thus, on balance, the *Grinnell* factors weigh toward preliminary approval.

### B. The Proposed Settlement Class Meets the Requirements of Rule 23.

The proposed settlement class must satisfy the requirements of Rule 23(a) and (b)(3). *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *7 (S.D.N.Y. Oct. 30, 2024). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id*. (quoting Fed. R. Civ. P. 23(a)(1)-(4)). Additionally, Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any

questions affecting only individual members" and that (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

### 1. The Class is sufficiently numerous.

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Generally, a putative class of over forty members is sufficient to satisfy numerosity. *Alcantara v. CNA Mgmt., Inc*., 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009). Here, the putative class includes approximately 45,798 individuals. Joint Decl. ¶ 5. Thus, numerosity is satisfied.

### 2. Questions of law and fact are common to the Class.

Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc*, 564 U.S. at 350. In other words, the determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. And "[e]ven a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P*., 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp*., 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here commonality is readily satisfied, as Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Breach discovered by Defendant on or about May 8, 2024. Doc. 43, ¶ 22. For example, Plaintiffs alleged the following questions of law and fact that are common to the class: "a. if Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information; b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and

scope of the information compromised in the Data Breach; c. if Defendant were negligent in maintaining, protecting, and securing PII in its possession and control; d. if Defendant breached contract promises to safeguard Plaintiffs and the Class's Private Information; e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it[.]" Doc. 43, ¶ 171. Thus, commonality is satisfied.

### 3. Plaintiffs' claims and defenses are typical.

Typicality requires that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3); *see also Grissom*, 2024 U.S. Dist. LEXIS 197927, at *17 (S.D.N.Y. Oct. 30, 2024). Here, Plaintiffs satisfy typicality. First, the claims and defenses of Plaintiffs and Class Members all stem from a single event: Defendant's Data Breach. Doc. 43 ¶¶ 22–46. And Plaintiffs and Class Members all share similar claims—which also derive from the same theories (*e.g.*, negligence). *See id*. ¶¶ 173–272. Moreover, typicality is generally found in data breach class actions like this one. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 490 (D. Minn. 2015); *Beasley v. TTEC Servs. Corp.*, Civil Action No. 22-cv-00097, 2023 U.S. Dist. LEXIS 81211, at *14 (D. Colo. May 9, 2023); *Thomsen v. Morley Co., Inc.*, No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703, at *6 (E.D. Mich. Nov. 4, 2022); *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915, 2022 U.S. Dist. LEXIS 234943, at *15 (E.D. Va. Sep. 13, 2022).

### 4. Plaintiffs will provide fair and adequate representation.

Adequacy requires that the class representative fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named [P]arties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997*); see also Grissom*, 2024 U.S. Dist. LEXIS 197927, at *17 (S.D.N.Y.

Oct. 30, 2024) ("The adequacy requirements are met both because the named plaintiff's interests are not antagonistic to those of the class and because, as discussed above, her attorneys have sufficient skill and experience to competently represent the class and have achieved a sound result.").

Here, adequacy is met because, as discussed above, Class Representatives share common interests with the class stemming from the exact same Data Breach. Doc. 43 ¶¶ 22–46. Thus, the Class Representatives do not have any interests antagonistic to other Class Members. Joint Decl. ¶ 8. And finally, the Class Representatives have retained qualified counsel with broad experience in complex class actions and, in particular, data breach class actions. *Id.* ¶ 9. Thus, adequacy is satisfied.

### C.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

#### 1.  Common questions of law and fact predominate.

Predominance requires that questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Supreme Court is clear that predominance "does *not* require" a plaintiff seeking class certification to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013) (emphasis added). Rather, predominance merely requires "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)); *see also Grissom*, 2024 U.S. Dist. LEXIS 197927, at *18 (S.D.N.Y. Oct. 30, 2024).

Courts recognize that predominance is readily satisfied in data breach class actions, which—by their very nature—predominately implicate many common questions. *See, e.g., Thomsen*, 2022 U.S. Dist. LEXIS 201703, at *8 (E.D. Mich. Nov. 4, 2022) (finding predominance

satisfied because class members all suffered similarly from the exact same data breach); *In re Sonic Corp. Customer Data Breach Litig*., No. 1:17-md-02807, 2020 U.S. Dist. LEXIS 204169, at *13 (N.D. Ohio Nov. 2, 2020) (same); *Kostka v. Dickey's Barbecue Rests., Inc*., No. 3:20-cv-03424, 2022 U.S. Dist. LEXIS 188186, at *28 (N.D. Tex. Oct. 14, 2022) (same); *Hapka v. Carecentrix, Inc*., No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (same).

Predominance is satisfied here because Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Breach discovered by Defendant on or about May 8, 2024. Doc. 43, ¶ 22. And as discussed *supra*, Plaintiffs alleged numerous common questions of law and fact which predominate over any individualized questions and are susceptible to common evidence. *See also* Doc. 43, ¶ 171; *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *17 (S.D.N.Y. Oct. 30, 2024) (finding predominance satisfied because "[c]ommon issues predominate across the class because their harms stem from [defendant's] treatment of class members").

### 2.  Class action treatment is superior to other methods.

Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Courts recognize that superiority is readily satisfied in data breach class actions "[b]ecause the data-breach issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information." *Thomsen*, 2022 U.S. Dist. LEXIS 201703, at *9; *see also In re Target Corp.*, 309 F.R.D. at 490 (D. Minn. 2015) (holding that "the class action device is the superior method for resolving this dispute"); *Beasley*, 2023 U.S. Dist. LEXIS 81211, at *19 (same); *Bowdle v. King's Seafood Co., LLC*, No. SACV 21-01784, 2022 U.S. Dist. LEXIS

240383, at *13-14 (C.D. Cal. Oct. 19, 2022) (same); *Attias v. Carefirst, Inc.*, 344 F.R.D. 38, 57 (D.D.C. 2023) (same).

Superiority is satisfied here. After all, individual litigation for all Class Members—who have the same claims arising from the same Data Breach—would be highly inefficient and unnecessarily burden judicial resources. Joint Decl. ¶ 26. Moreover, the proposed Settlement will give the Parties the benefit of finality, as opposed to protracted and individualized litigation. *Id.* ¶ 23. Thus, superiority is satisfied. *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *18 (S.D.N.Y. Oct. 30, 2024) (finding that "a class action is a superior method of resolving" the "common legal and factual issues").

### D.  The Court Should Approve the Proposed Notice Plan.

The Court should approve the notice plan because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. And notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The proposed notice plan satisfies due process. Here, the Parties have agreed that "Postcard Notice shall be disseminated via U.S. Mail to the Settlement Class's mailing addresses, to the extent known" and that "Notice shall also be published on the Settlement Website." S.A. ¶ 81. And both the Short Form Notice (Postcard) and Long Form Notice provide all information required by Fed. R. Civ. P. 23(c)(2)(B). *See* S.A. Exs. B, D. Thus, the proposed notice plan satisfies—and even exceeds—that which is required by due process. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (collecting cases) (explaining that "[t]here are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements" and that "[n]otice is considered 'adequate if it may be understood by the average class member'").

### E.  The Court Should Appoint the Settlement Administrator.

The Court should appoint EAG as the Settlement Administrator. The Parties agreed upon EAG given its substantial experience in administering complex class action settlements. Joint Decl. ¶ 4.

### F.  The Court Should Appoint the Class Representatives.

The Court should appoint Plaintiffs Efstathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin as Class Representatives. Thus far, Plaintiffs adequately represented the Settlement Class by assisting in the investigation of the case, reviewing the complaints, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering Class Counsel's many questions. Joint Decl. ¶ 8. Additionally, Class Counsel will request Service Awards of $5,000.00 for each Class

Representative. *Id.* ¶ 106; *see Lowe*, 2022 U.S. Dist. LEXIS 180182, at *27 (N.D.N.Y. Sep. 30, 2022) ("A Service Award of $5,000.00 for each Class Representative is reasonable and within the range of awards granted in this Circuit.").

### G.  The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). As evidenced by the Joint Declaration of Counsel, the proposed Class Counsel meets these requirements. Joint Decl. ¶¶ 28–34. Thus, the Court should appoint David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC and Jonathan Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C. as Class Counsel under Rule 23(g).

## VI.    CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the settlement described in the "Settlement Agreement" between Plaintiffs and Christie's Inc.; (2) preliminarily certifying the Settlement Class for purposes of Settlement; (3) appointing Plaintiffs Efstathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin as Class Representatives; (4) appointing David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC and Jonathan Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C. as Class Counsel; (5) approving the notice plan set forth in the Settlement Agreement; (6) appointing Eisner Advisory Group, LLC as Settlement Administrator; (7) approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C);

and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

Date: December 13, 2024                    Respectfully submitted,

                                           */s/ David Lietz*
                                           David K. Lietz
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           5335 Wisconsin Ave. NW, Ste. 440
                                           Washington, D.C. 20015-2052
                                           Tel.: (866) 252-0878
                                           E: dlietz@milberg.com

                                           Jonathan S. Mann
                                           **PITTMAN, DUTTON, HELLUMS,**
                                           **BRADLEY & MANN, P.C.**
                                           2001 Park Place, Ste. 1100
                                           Birmingham, AL 35203
                                           Tel: (205) 322-8880
                                           E: jonm@pittmandutton.com

                                           *Interim Lead Class Counsel for Plaintiffs*
                                           *and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

*/s/ David Lietz*
Counsel for Plaintiffs