UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

| | |
|---|---|
| IN RE CHRISTIE'S DATA BREACH LITIGATION | No. 24-CV-4221 (JMF) |
| *This Document Relates To:*<br>*All Member Cases* | CLASS ACTION |

----------------------------------------------------------------------x

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I. PLAINTIFFS HAVE ARTICLE III STANDING ........................................................................ 1

    A. Plaintiffs Adequately Plead Cognizable Injuries-in Fact .............................................. 1

    B. Plaintiffs' Injuries are Fairly Traceable to Defendant's Misconduct and Subsequent Data Breach .................................................................................................................. 4

    C. Plaintiffs' Injuries are Redressable ................................................................................ 5

    D. Other Cases Supporting Plaintiffs' Standing ................................................................ 5

II. ADDITIONAL INQUIRIES FROM THE COURT .................................................................. 6

    A. The import, if any of the absence of relief in the proposed settlement for the State Subclasses alleged in the First Amended Complaint, see ECF No. 43, ¶¶ 159-62 ....... 6

    B. Why the Class is limited in the Settlement Agreement to "all persons residing in the United States whose Private Information was compromised as a result of the Data Breach and who were sent notice of the Data Breach," ECF No. 49-1, ¶ 2 (emphasis added); see also id. ¶ 62, when the First Amended Complaint defines the Nationwide Class and the State Subclasses as "[a]ll individuals. . . whose Private Information was accessed and/or acquired in the Data Breach discovered by Defendant in May 2024, including"— but presumably not limited to — "all those individuals who received notice of the Data Breach," ECF No. 43, ¶ 158 (emphasis added); see also id. ¶ ¶ 159-62. ............. 8

    C. Assuming the Class is limited to those who already received notice of the breach — and thus, the members of the Class are known — whether the settlement could or should be structured to provide payments to all Class members rather than only those who submit claims — that is, whether the settlement needs to be a claims-made settlement .......................................................... 9

    D. Whether the Court can or should require electronic notice to Class members in a manner that would enable the Class members to use a link to submit a claim and/or request payment through platforms such as Zelle, Venmo, or Paypal ..............11

    E. Why the Court should enjoin and stay "any actions brought by Settlement Class Members" (other than the named Plaintiffs) "concerning the Released Claims . . . pending Final Approval of the Settlement Agreement," ECF No. 49-3, ¶ 16. ................................................................................................................. 12

III. CLASS REPRESENTATIVE DECLARATIONS .................................................................. 13

IV. CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bohnak v. Marsh & McLennan Companies, Inc.*,
  79 F.4th 276 (2d Cir. 2023) ................................................................................................. 3

*Carollo v. United Capital Corp.*,
  6:16-CV-13, 2023 U.S. Dist. LEXIS 79441 (N.D.N.Y. May 8, 2023) ..................................... 13

*Cf. Gruber v. Gilbertson*, 647 F. Supp. 100, (S.D.N.Y. 2022) .......................................................... 8

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) ................................................................................................. 4

*Cooper v. Bonobos, Inc.*,
  No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ....................................... 5, 6

*Everetts v. Pers. Touch Holding Corp.*,
  No. 21CV02061JMAARL, 2024 WL 227811 (E.D.N.Y. Jan. 22, 2024) ................................... 6

*Fero v. Excellus Health Plan, Inc.*,
  No. 6:15-CV-06569 EAW, 2022 WL 1292133 (W.D.N.Y. Apr. 29, 2022) ............................. 6

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 Fed. Appx. 384 (6th Cir. 2016) .................................................................................... 2

*Grove v. Port Auth. of Allegheny Cnty.*,
  218 A.2d 877 (Pa. 2019) ..................................................................................................... 7

*Hamme v. CXS Transp., Inc.*,
  621 So. 3d 281 (Ala. 1993) ................................................................................................. 7

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ............................................................................................... 10

*In re BankAmerica Corp. Sec. Litig.*,
  775 F.3d 1060 (8th Cir. 2015) ............................................................................................ 10

*In re Canon U.S.A. Data Breach Litigation*,
  No. 20-CV-6239-AMD-SJB, 2024 WL 3650611 (E.D.N.Y. Aug. 5, 2024) ............................. 6

*In re Citigroup Inc. Sec. Litig.*,
  199 F. Supp. 3d 845 (S.D.N.Y. 2016) ................................................................................. 10

*In re GEICO Customer Data Breach Litig.*, 21-cv-2210,
  2023 U.S. Dist. LEXIS 127536 (E.D. N.Y. July 21, 2023) ..................................................... 4

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
  No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) ....................................... 6

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  2022 WL 3550045 (S.D. Fla. Aug. 18, 2022) ........................................................................... 7

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. Dec. 18, 2014) ......................................................................... 5

*In re Unite Here Data Sec. Incident Litig.*,
  No. 24-cv-1565 (JSR), 2024 WL 3413942 (S.D.N.Y. July 15, 2024) ........................................ 3

*Klier v. Elf Atochem N. Am., Inc.*,
  658 F.3d 468 (5th Cir.2011) .................................................................................................... 10

*Koeller v. Numrich Gun Parts Corp.*,
  1:22-cv-675, 2023 U.S. Dist. LEXIS 228801 (N.D.N.Y. Dec. 20, 2023) ................................ 13

*Leslie v. City of New York*,
  No. 22-cv-2305, 2023 U.S. Dist. LEXIS 49775 (S.D. N.Y. Mar. 23, 2023) .............................. 4

*Lewert v. P.F. Chang's China Bistro, Inc.*,
  819 F.3d 963 (7th Cir. 2016) .................................................................................................... 5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, (1992) ................................................................................................................. 1

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir.2007) .................................................................................................... 10

*McMorris v. Carlos Lopez & Assocs., LLC*,
  995 F.3d 295 (2d Cir. 2021) ............................................................................................. 2, 3, 5

*Palumbo v. Fasulo*,
  No. 07-CV-797 (PKC)(RML), 2019 U.S. Dist. LEXIS 253149 (E.D.N.Y. Jan. 30, 2019) ...... 13

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) .................................................................................................... 5

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ................................................................................................ 4

*S.E.C. v. Bear, Stearns & Co. Inc.*,
  626 F. Supp. 2d 402 (S.D.N.Y. 2009) .................................................................................... 10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................................. 1, 4

*Steven v. Carlos Lopez & Assocs., LLC*, 422 F. Supp. 3d 801 (S.D.N.Y. 2019),
  aff'd sub nom. *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021) ...............5

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .................................................................................................. 1

*Toll Bros., Inc. v. Twp. of Readington*,
    555 F.3d 131 (3d. Cir. 2009) .................................................................................... 4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................................................. 1

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) .................................................................................................. 4

**STATUTES**

Fla. Stat. § 211(2) ............................................................................................................. 7

Fla. Stat. §§ 501.201 ........................................................................................................ 7

Pursuant to this Court's Order of December 18, 2024 [Doc. 50], Plaintiffs Efstathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin submit this supplemental memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, and state the following:

## I.   PLAINTIFFS HAVE ARTICLE III STANDING

Generally, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, (1992)).

As the Court knows, the law surrounding Article III's standing requirements in the data breach context has been rapidly evolving ever since the Supreme Court's opinion in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). However, the case law of this circuit has developed significantly over the last several years, and the new line of cases clearly illustrate that Plaintiffs here have standing to sue.

### A. Plaintiffs Adequately Plead Cognizable Injuries-in Fact

An injury is concrete for purposes of Article III if it has a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2205 (quoting *Spokeo*, 578 U.S. at 340-41 (2016)). Concrete injuries can include "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," including "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 2204. Importantly, intangible injuries like the threat of future injury may also be concrete. *Spokeo*, 578 U.S. at 341. "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

1

First, Plaintiffs Colley and Gaifullin have alleged that they have already suffered from actual misuse of their data that Christie's failed to safeguard. Cybercriminals used Plaintiff Colley's personal information in an attack to hack into his account with his cell phone provider, and cybercriminals used Plaintiff Gaifullin's information to successfully hack into his PayPal account. *See* Plaintiffs' First Amended Consolidated Complaint ("FAC"), ¶¶ 72, 125.

Second, each Plaintiff also alleged a plausible risk of future identity theft. The Second Circuit recently established a simple framework of three factors to be considered when determining whether the future injuries alleged are "concrete" enough to confer standing upon a data breach plaintiff. The three-factor test was first advanced in *McMorris v. Carlos Lopez & Assocs., LLC*:

> (1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud.

995 F.3d 295, 303 (2d Cir. 2021).

Plaintiffs here satisfy this test by alleging that their Private Information has been exposed in Defendant's Data Breach, by explaining that their data has been posted and viewed on the dark web, by detailing the injuries sustained, alleging actual misuse, and by describing the highly sensitive nature of the types of information that were breached and the impact that the compromised information can have on their daily lives. FAC, ¶¶ 17-25, 38-143. Defendant's data breach threatens to harm Plaintiffs again because it has exposed them to an increased risk for identity theft and fraud, a fact Defendant acknowledged in its data breach notice letter. Defendant well-knows that once highly sensitive personal information is exposed and compromised, the risk of fraud and identity theft is certainly impending. *Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. Appx. 384, 388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable

inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints.").

The Second Circuit applied the *McMorris* factors in another case with similar allegations and held that the alleged risk of future harm arising from the data breach was a cognizable concrete injury for Article III standing purposes. *See Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2d Cir. 2023). In *Bohnak*, the court found the injuries were concrete because, (1) "[f]irst and foremost, Bohnak has alleged that her PII was exposed as a result of a targeted attempt by a third party to access the data set[,]" (2) "the PII taken by the hackers includes her name and SSN. [ ] This is exactly the kind of information that gives rise to a high risk of identity theft[,]" and <u>despite</u> that (3) "she has not alleged any known misuse of information in the dataset accessed in the hack." Again, here it is undisputed that Plaintiffs' information was stolen in a targeted attack, and that the information stolen included Plaintiffs' names, dates of birth, addresses, driver's license and passport numbers, and other information that could be used to commit fraud against them, and Plaintiffs Colley and Bruce have alleged previous actual and attempted misuse.

The Hon. Judge Rakoff also recently performed a thoughtful and thorough analysis in a data breach case with similar allegations to those made by Plaintiffs and found that standing existed. *See In re Unite Here Data Sec. Incident Litig.*, No. 24-cv-1565 (JSR), 2024 WL 3413942, at *4 (S.D.N.Y. July 15, 2024) (finding standing due to a "substantial risk of future identity theft[.]").

Plaintiffs also allege that they experienced a variety of other injuries, including diminution in value of their PII, mitigation damages, and lost opportunity time addressing the data breach (at Christie's direction in the Notice), and increased spam and phishing messages. Additionally, at least one Plaintiff has been notified that their Private Information is on the dark web. As such, Plaintiffs and all Class members have alleged concrete injuries.

### B. *Plaintiffs' Injuries are Fairly Traceable to Defendant's Misconduct and Subsequent Data Breach*

The second requirement for Article III standing is traceability. *Spokeo*, 136 S. Ct. at 1547. To show traceability, a plaintiff "must demonstrate a causal nexus between the defendant's conduct and the injury." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016). "At the motion to dismiss stage, plaintiffs' burden on traceability is 'relatively modest.'" *Leslie v. City of New York*, No. 22-cv-2305, 2023 U.S. Dist. LEXIS 49775, at *15 (S.D. N.Y. Mar. 23, 2023). "This causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim. Rather, an indirect causal relationship will suffice, so long as there is 'a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant[.]'" *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d. Cir. 2009) (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). "Even a showing that a plaintiff's injury is indirectly caused by a Defendants' actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). "The traceability requirement focuses on whether the asserted injury could have been a consequence of the actions of the defendant[.]" *In re GEICO Customer Data Breach Litig.*, No. 21-cv-2210, 2023 U.S. Dist. LEXIS 127536, at *18 (E.D. N.Y. July 21, 2023) (quoting *Chevron Corp.*, 833 F.3d at 121).

Plaintiffs easily satisfy this standard. Here, the pleadings demonstrably show multiple injuries in fact that are fairly traceable to Defendant. Plaintiffs allege that (i) the Data Breach occurred because of Defendant's misconduct, (ii) their PII, including their dates of birth and other non-public information, was exfiltrated by malicious cybercriminals, (iii) the exfiltrated infiltration was posted and viewed on the dark web, and (iv) the exfiltration of their PII by cybercriminals resulted in actual misuse of their Private Information, lost time, loss of privacy, diminution in value of their PII, and emotional injuries. *See, e.g.*, FAC ¶¶ 17-25, 38-143. These allegations constitute injuries-in-fact that clearly flow from Defendant's negligent conduct and, at

the pleading stage, are sufficient to satisfy the "fairly traceable" standing requirement because, "but for" Defendant's misconduct, Plaintiffs and the Class would not have been harmed. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (stating that defendant's argument regarding potential alternative causes for plaintiffs' injuries may be pursued at the merits phase); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696 (7th Cir. 2015) ("The fact that [an alternative source] *might* have caused the plaintiffs private information to be exposed does nothing to negate the plaintiffs' standing to sue.") (emphasis in original); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159 (D. Minn. Dec. 18, 2014) (concluding that plaintiffs' allegations that they suffered injuries that are fairly traceable to defendant "is sufficient at this stage to plead standing[.]").

### C. Plaintiffs' Injuries are Redressable

If Plaintiffs were to successfully prosecute their claims against Defendant, Plaintiffs would be entitled to recover money damages to compensate them for the harms they have alleged. Redressability is typically not disputed regarding the monetary damages sought in these types of cases.

### D. Other Cases Supporting Plaintiffs' Standing

*McMorris* and *Bohnak* did not yet exist when this Court denied settlement approvals in *Steven v. Carlos Lopez & Assocs., LLC*, 422 F. Supp. 3d 801 (S.D.N.Y. 2019), *aff'd sub nom. McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021) and in *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022). Regardless, the facts of both of those cases were severely anemic and entirely dissimilar from the facts Plaintiffs have alleged. In *Steven*, an employee of the defendant "accidentally sent an email containing personal information about . . . CLA employees to a distribution list of current CLA employees[, and] there [was] no evidence that the personal information contained in the email was shared with

anyone outside of CLA, let alone misused[.]" *Steven,* 422 F. Supp. 3d at 803. In *Cooper*, the only information breached was the plaintiff's publicly-available contact information and encrypted account password. *Cooper,* 2022 WL 170622 at 1. Here, Plaintiffs have alleged that hackers targeted Defendant and stole information that included their passport information, driver's license information, and/or state and government-issued ID information, which included full names, dates of birth, passport numbers, driver's license numbers, and other non-publicly available information. FAC, ¶¶ 24-25.

The facts alleged in this case are much more like those in *McMorris*, *Bohnak*, and the numerous other data breach cases where settlements have been recently approved by courts within this district and other districts within the state. *See, e.g., Fero v. Excellus Health Plan, Inc.*, No. 6:15-CV-06569 EAW, 2022 WL 1292133 (W.D.N.Y. Apr. 29, 2022) (granting final approval of a class settlement in a data breach case); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) (granting final approval of a class settlement in a data breach case); *Everetts v. Pers. Touch Holding Corp.,* No. 21CV02061JMAARL, 2024 WL 227811 (E.D.N.Y. Jan. 22, 2024) (granting preliminary approval of a class settlement in a data breach case); *In re Canon U.S.A. Data Breach Litigation*, No. 20-CV-6239-AMD-SJB, 2024 WL 3650611 (E.D.N.Y. Aug. 5, 2024) (granting final approval of a class settlement in a data breach case after previously holding that plaintiffs had standing).

## II.   ADDITIONAL INQUIRIES FROM THE COURT

### A. *The import, if any of the absence of relief in the proposed settlement for the State Subclasses alleged in the First Amended Complaint, see ECF No. 43, ¶¶ 159-62.*

The absence of extra relief in the proposed Settlement for the State Subclasses beyond that of the Nationwide Class has no import to its fairness to all Settlement Class Members. Plaintiffs' First Amended Complaint defines State Subclasses of "all individuals residing in" Alabama, Florida, Pennsylvania or Texas "whose Private Information was accessed and/or acquired" in the

6

Data Breach. ECF No. 43, ¶¶ 159-62. The Nationwide Class encompasses "all individuals residing in the United States whose Private Information was accessed and/or acquired" in the Data Breach. *Id.* ¶ 158. Therefore, all of the individuals in the State Subclasses are also in the Nationwide Class.

*First*, none of the causes of action alleged on behalf of State Subclass Members, but not on behalf of Nationwide Class Members, provide statutory damages, but rather provide essentially the same actual damages and declaratory and injunctive sought on behalf of all Nationwide Class Members. Those causes of action are (1) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"), (2) negligence *per se* under Alabama, Pennsylvania and Texas law, and (3) wantonness under Alabama law. *See* ECF No. 43, ¶¶ 234-72. These causes of action provide actual damages, *see* Fla. Stat. § 211(2), *Grove v. Port Auth. of Allegheny Cnty.*, 218 A.2d 877, 889 (Pa. 2019) (actual damages required for negligence *per se* claim), *Hamme v. CXS Transp., Inc.*, 621 So. 3d 281, 284 (Ala. 1993) (reversing directed verdict for defendant as to claim for compensatory damages on wantonness claim), when Plaintiffs also sought actual damages under the negligence and breach of implied contract claims they brought on behalf of Nationwide Class Members. *See* ECF No. 43, ¶¶ 234-72; *see also id.* ¶ 135 (outlining the types of actual damages Plaintiffs suffered). In addition, Plaintiffs sought declaratory and injunctive relief under FDUTPA, *see id.* ¶ 265, *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2022 WL 3550045, at *1-3 (S.D. Fla. Aug. 18, 2022) (denying motion to dismiss FDUTPA injunctive relief in a data breach case), when they also alleged a declaratory and injunctive relief claim on behalf of Nationwide Class Members, *see* ECF No. 43, ¶¶ 225-33.

*Second*, one reason Plaintiffs alleged separate causes of action on behalf of the State Subclass Members is that some of those causes of action may have prevailed on a motion to dismiss, summary judgment, or trial, or at class certification, even if other causes of action available to the Nationwide Class Members did not. Thus, the State Subclasses were alleged as a

backstop in case the Nationwide Class claims failed. The Settlement accounts for these risks going in both directions and provides relief to all Settlement Class Members equally.

*Third*, to the extent additional categories of damages (treble, punitive, etc.) were sought by State Subclass Members beyond those sought by the other Nationwide Class Members, obtaining those additional categories of damages would require proving additional elements on liability and entail substantially greater risks beyond obtaining the actual damages sought by all Nationwide Class Members. Those substantial risks meant that additional settlement compensation for the State Subclass Members was not warranted, when all Settlement Class Members are eligible to receive relief from the Settlement. *Cf. Gruber v. Gilbertson*, 647 F. Supp. 100, (S.D.N.Y. 2022) (agreeing that the settlement was "fair and adequate in view of the complexity of this litigation, the risks that plaintiffs would have run in establishing liability or proving damages at trial and sustaining any verdict on appeal").

For these reasons, the Settlement providing the same options for relief to all Settlement Class Members is fair to all Settlement Class Members.

> **B. Why the Class is limited in the Settlement Agreement to "all persons residing in the United States whose Private Information was compromised as a result of the Data Breach and who were sent notice of the Data Breach," ECF No. 49-1, ¶ 2 (emphasis added); see also id. ¶ 62, when the First Amended Complaint defines the Nationwide Class and the State Subclasses as "[a]ll individuals. . . whose Private Information was accessed and/or acquired in the Data Breach discovered by Defendant in May 2024, including"— but presumably not limited to — "all those individuals who received notice of the Data Breach," ECF No. 43, ¶ 158 (emphasis added); see also id. ¶ ¶ 159-62.**

In Plaintiffs' First Amended Complaint, the classes were defined as "[a]ll individuals . . . whose Private Information was accessed and/or acquired in the Data Breach discovered by Defendant in May 2024, including all those individuals who received notice of the Data Breach. *See* ECF No. 43 ¶¶ 158-162.  In the Settlement Agreement, the Settlement Class is defined as "all

8

persons residing in the United States whose Private Information was compromised as a result of the Data Breach and who were sent notice of the Data Breach." ECF No. 49-1, Paragraph 62.

The distinction between the language used in the First Amended Complaint and the Settlement Agreement is not substantively significant. The phrase "including all those individuals who received notice of the Data Breach" in the complaint was intended to encompass all individuals affected by the Data Breach. The definition of the Settlement Class in the Settlement Agreement does not exclude any individuals impacted by the Data Breach. All persons residing in the United States whose Private Information was compromised as a result of the Data Breach were sent notice of the Data Breach—save for 2 individuals determined to be deceased. In other words, of the 45,798 individuals in the U.S. who were impacted, 45,796 were provided notice (with 45,770 being notified via U.S.P.S. mail, and 26 notified via email), and 2 were determined to be deceased. The negotiated Class Definition in the Settlement Agreement is consistent with pre-mediation discovery, and is consistent with the Class Definition in the First Amended Complaint.

> **C. Assuming the Class is limited to those who already received notice of the breach — and thus, the members of the Class are known — whether the settlement could or should be structured to provide payments to all Class members rather than only those who submit claims — that is, whether the settlement needs to be a claims-made settlement**

While this non-reversionary common fund settlement does not necessarily need a claims process, the real-world experience of Class Counsel in other data breach cases with attempting to send all Class Members payments strongly mitigates against that form of settlement distribution. In *Khederlarian et al. v. Utility Trailer Manufacturing Company*, Case No. 22STCV30604 (LA County Sup. Ct.), Class Counsel attempted precisely what the Court is suggesting here – namely, sending every Class Member a check for an equal share of the net settlement fund generated from a $700,000 non-reversionary common fund settlement. The results, as reported in the Supplemental Declaration of Annette Kashkarian re: Distribution of Settlement Funds

("Kashkarian Decl.," attached hereto as **Exhibit A**) filed in the *Khederlarian* case on November 25, 2024, were an unmitigated disaster. Out of 25,641 claimants who received check payments issued on January 18, 2024, only 8,704 class members cashed their checks, for a total of $139,187.84. Kashkarian Decl ¶ 5. Due to the amount of funds from uncashed that remained, counsel requested that the settlement administrator Verita re-issue checks to the 16,935 claimants whose initial checks went uncashed. Only 1,353 of these residual checks were cashed totaling $21,243.20, while 15,582 remaining uncashed for a total of $241,439.44. *Id*. The re-issue distribution costs were approximately $27,550 of money that could have gone to the Class, with the remaining amount (approximately $213,889) going to the *cy pres* recipient. *Id*.

To put a point on this, the distribution scheme in the *Khederlarian* case where every Class Member was sent a check (or two checks, because of the re-issues) resulted in over 30% of the entire settlement being sent to the *cy pres* recipient. Case law dictates that this is not the desired result, but rather that settlement funds should end up in the hands of Class Members. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013)("direct distributions to the class are preferred over cy pres distributions"); .*S.E.C. v. Bear, Stearns & Co. Inc.*, 626 F. Supp. 2d 402, 414 (S.D.N.Y. 2009) ("The use of a *cy pres* remedy to distribute remaining funds in a class action settlement poses many dangers.") Indeed, case law from this Court dictates that *cy pres* awards should be made only when it is not feasible to make payments to class members:

> *cy pres* designations should be made only when it is "'not feasible to make further distributions to class members.'" *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir.2015) (quoting *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir.2011)); see *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir.2007). This element derives from the stringent trust law requirement that prohibits *cy pres* designations of trust funds unless the trust's original purpose "could not be carried out." *S.E.C. v. Bear, Stearns & Co. Inc.*, 626 F.Supp.2d 402, 414 (S.D.N.Y.2009).

*In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 848 (S.D.N.Y. 2016).

In sharp contrast, the claims process and distribution scheme proposed by Class Counsel here puts virtually all the net Settlement Funds in the hands of Class Members making valid claims, by "sweeping" all remaining funds out to Class Members making valid claims via the *pro rata* payments. In settlements structured this way, it is typically only uncashed checks and unnegotiated e-payments by those Class Members who took the time to make a claim that end up being awarded to the *cy pres* recipient, and those amounts are typically very small dollar-wise. There is virtually no danger of a large percentage of the settlement ending up being awarded to the *cy pres* recipient, as occurred in *Khederlarian*. It is the considered judgment of Class Counsel, based upon recent negative experience with attempting what the Court suggests here, that having a claims process is in the best interests of this Class.

### D. Whether the Court can or should require electronic notice to Class members in a manner that would enable the Class members to use a link to submit a claim and/or request payment through platforms such as Zelle, Venmo, or Paypal

The claims process here already allows for Class Members to request payment through electronic payment platforms such as Zelle, Venmo, or Paypal. The Claim Form, which is Exhibit A to the Settlement Agreement filed at ECF 49-1, contains a section to select an e-payment. That Claim Form will be "translated" by the Settlement Administrator into the online version of the Claim Form, which will include an electronic payment widget where Class Members submitting their claims electronically may select their preferred form of e-payment.

Also, in responding to this question posed by the Court, Class Counsel agrees that an e-payment selection should be added to the "tear-off" claim form attached to the Postcard Notice (Exhibit C to the Settlement Agreement, also at ECF 49-1), and submit a redlined version of the Postcard (attached hereto as **Exhibit B**) with that proposed change for the Court's review.

Finally, it is the opinion of Class Counsel that electronic notice to the Class Members with an active link embedded is not possible or advisable. It is not possible because Defendant has

11

indicated that it does not have good email addresses for Class Members. It is not advisable because A) email notice is potentially problematic, in that it may be blocked by spam filtering, or may be perceived as spam by the recipients, and B) asking Class Members to click on an active link in an unsolicited email when their PII has already been compromised is bound to be viewed with a high degree of suspicion and wariness. Cyber experts strongly caution people <u>not</u> to click on any active link in an unsolicited email.[1]

### E. Why the Court should enjoin and stay "any actions brought by Settlement Class Members" (other than the named Plaintiffs) "concerning the Released Claims . . . pending Final Approval of the Settlement Agreement," ECF No. 49-3, ¶ 16.

The Parties' Settlement Agreement provides that Plaintiffs' motion for preliminary approval shall request that the Court "Stay the Action and Related Actions pending Final Approval of the Settlement…" ECF No. 49-1, ¶ 75. To that end, the Proposed Preliminary Approval Order requests that the Court stay the Litigation and that "any actions brought by Settlement Class Members concerning the Released Claims are hereby enjoined and stayed pending Final Approval of the Settlement Agreement." ECF No. 49-3, ¶ 16. The Court should enter this provision of the Proposed Preliminary Approval Order for two reasons.

First, it would be an inefficient use of judicial resources to allow any non-consolidated related action arising out of, or related to, the Data Breach to proceed given that the proposed Settlement resolves all claims and damages "that result from, arise out of, are based upon, or relate to (a) the Data Breach or Defendant's response to the Data Breach; (b) the Action or Related Action; or (c) any of the alleged violations of laws or regulations cited or that could have been

---

[1] "The core advice from everyone is the same: don't click on unsolicited links from strangers or untrustworthy sources. Many security experts would say not to click on any links in an email at all, at least not verifying the authenticity if it's from someone you know or checking out the destination (beware of link hovering attacks, though) if you don't.."
https://www.forbes.com/sites/daveywinder/2025/01/08/do-not-click-new-gmail-outlook-apple-mail-warning-for-billions/ (last accessed January 8, 2025)

asserted in the Complaint." ECF No. 49-1, ¶ 110. Should any Settlement Class Member have a pending related action asserting such claims (although Interim Lead Class Counsel and Defendant are aware of none), it would be most efficient for the Court to stay those actions, allow class notice to proceed, and give Settlement Class Members the opportunity to participate in, request exclusion, or object to the proposed Settlement. Courts routinely enter preliminary approval orders that include similar language. *See, e.g. Koeller v. Numrich Gun Parts Corp.*, No. 1:22-cv-675, 2023 U.S. Dist. LEXIS 228801, at *14 (N.D.N.Y. Dec. 20, 2023); *Palumbo v. Fasulo*, No. 07-CV-797 (PKC)(RML), 2019 U.S. Dist. LEXIS 253149, at *29 (E.D.N.Y. Jan. 30, 2019); *Carollo v. United Capital Corp.*, No. 6:16-CV-13, 2023 U.S. Dist. LEXIS 79441, at *13 (N.D.N.Y. May 8, 2023).

Second, even if any related actions were pending on behalf of Settlement Class Members that concern the Released Claims, those Settlement Class Members will receive notice of the Settlement and have the opportunity to either participate in the benefits it offers or opt out of the Settlement and maintain their right to separately prosecute their claims. ECF No. 49-1, ¶¶ 82, 84. Thus, this provision of the Proposed Preliminary Approval Order will not prejudice or cause undue delay to any absent Settlement Class Member.

### III.   CLASS REPRESENTATIVE DECLARATIONS

Attached as **Exhibits C1-C5** are declarations from Class Representatives detailing, with specificity, what "assist[ance]" he or she provided with respect to "the investigation of the case." ECF No. 49-2, ¶ 8.

### IV.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court grant their motion for preliminary approval (ECF No. 49) and for entry of an Order: (1) granting preliminary approval of the settlement described in the "Settlement Agreement" between Plaintiffs and Christie's Inc.;

13

(2) preliminarily certifying the Settlement Class for purposes of Settlement; (3) appointing Plaintiffs Efstathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin as Class Representatives; (4) appointing David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC and Jonathan Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C. as Class Counsel; (5) approving the notice plan set forth in the Settlement Agreement; (6) appointing Eisner Advisory Group, LLC as Settlement Administrator; (7) approving the form and content of the Short Form Notice (ECF No. 49-1, Ex. A), Long Form Notice (ECF No. 49-1, Ex. B), and Claim Form (ECF No. 49-1, Ex. C); and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

Date: January 9, 2025

Respectfully submitted,

*/s/ David Lietz*
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Ave. NW, Ste. 440
Washington, D.C. 20015-2052
Tel.: (866) 252-0878
E: dlietz@milberg.com

Jonathan S. Mann
**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
2001 Park Place, Ste. 1100
Birmingham, AL 35203
Tel: (205) 322-8880
E: jonm@pittmandutton.com

*Interim Lead Class Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 9, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                             */s/ David Lietz*
                                                             Of Counsel for Plaintiffs