**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE CHRISTIE'S DATA BREACH LITIGATION | |
|---|---|
| *This Document Relates To: All Member Cases* | Case No. 24-CV-4221 (JMF) |

**MEMORADUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

III.    SUMMARY OF SETTLEMENT ....................................................................... 4

        A.      Settlement Benefits ................................................................................. 4

                1.      Documented Monetary Losses .................................................... 5

                2.      Pro Rata Cash Payments ............................................................ 5

                3.      Credit Monitoring ...................................................................... 5

                4.      Injunctive Relief......................................................................... 5

        B.      Attorneys' Fees and Service Awards ...................................................... 6

        C.      Preliminary Approval, Notice, and Claims............................................ 6

IV.     ARGUMENT ...................................................................................................... 7

        A.      The Settlement Meets the Standards for Final Approval Under Rule 23(e)........... 7

                1.      Plaintiffs and Settlement Class Counsel Have Adequately Represented
                        the Settlement Class in this Action ............................................ 9

                2.      The Settlement Was Negotiated at Arm's Length and Aided by a
                        Respected and Experienced Mediator...................................... 10

                3.      The Relief Provided for the Class Is Adequate........................ 11

                        a.      The Relief Provided is Superior to Continued Litigation ............. 12

                        b.      The Reaction of the Settlement Class ............................. 13

                        c.      Stage of the Proceedings and Amount of Discovery Completed.. 15

                        d.      The Risks of Continued Litigation................................. 15

                        e.      The Ability of Defendant to Withstand Greater Judgment........... 17

                        f.      The Reasonableness of the Settlement Amount in Light of the Best
                                Possible Recovery and the Risks of Litigation ............................. 18

                        g.      The Remaining Rule 23(e)(2) Factors Support Final Approval ... 19

        B.      The Court Should Certify the Settlement Class.................................... 20

        C.      Notice To the Settlement Class Satisfied Rule 23 and Due Process .................... 21

     D.     The lone objection lacks merit and should be overruled. ...................................... 23

V.     CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**CASE(S)**                                                           **PAGE(S)**

*Belton v. GE Capital Consumer Lending, Inc.*,
No. 21-cv-9493-CM, 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) .......................................... 11

*Brinker Data Incident Litig.*,
No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......................... 16

*Browning v. Yahoo! Inc.*,
No. 04-cv-01463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) .......................................... 24

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) .......................................................................... 15

*Charron v. Pinnacle Group NY LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) ............................................................................. 14, 15

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) .................................................................................................. 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................................................ 8, 13, 15

*City of Providence v. Aéropostale, Inc.*,
No. 11-cv-7132-CM-GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................ 7

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................................... 14

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................... 14

*Fleisher v. Phx. Life Ins. Co.*,
No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)............ 15

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
104 F. Supp. 3d 290 (E.D.N.Y 2015) .................................................................................... 16

*In re Giant Interactive Group, Inc. Securities Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................. 17, 18, 21

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ............................................................................................... 17

*Hall v. ProSource Techs., LLC*,
    No. 14-cv-2502-SIL, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)........................................ 22

*Hammond v. The Bank of N.Y. Mellon Corp*.,
    No. 08-cv-6060-RMB-RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .......................... 13

*Hanlon v. Chrysler Corp*.,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 24

*Hart v. RCI Hospital Holdings, Inc.*,
    No. 09-cv-3043-PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ...................................... 7

*In re Anthem, Inc. Data Breach Litig*.,
    327 F.R.D. 299 (N.D. Cal. 2018)............................................................................................ 25

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig*.,
    No. 02-cv-5575-SWK, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................ 13

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................................... 18

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................................... 20

*In re Countrywide Financial Corp Customer Data Sec. Breach Litig.*,
    No. 3:08-md-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ...................................... 14

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ........................................................................................... 10

*In re Equifax Inc. Customer Data Sec. Breach Litig*,
    No. 17-nd-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............................................... 24

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018)..................................................................................... 10

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................................ 9, 11, 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*.,
    293 F.R.D. 21 (D. Me. 2013) .................................................................................................. 13

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................... 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 and 12-cv-5822-NRB,
    2020 WL 6290596 (S.D.N.Y. Oct. 27, 2020) ........................................................... 23

*In re LinkedIn User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................... 12

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................... 12

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
    No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023) ............................ 17

*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*,
    No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) ................................ 17

*In re Marriott Int'l, Inc.*,
    78 F.4th 677 (4th Cir. 2023) ............................................................................... 17

*In re Mexican Gov't Bonds Antitrust Litig.*,
    No. 18-cv-02830-JPO, 2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021) .................... 22

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) .................................................................... 8

*In re Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................... 16

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................................. 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................... 20

*In re Sony SCRD Rear Projection Television Class Action Litig.*,
    No. 06-cv-5173-RPP, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................... 17

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................... 7

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F.Supp.2d 503 (E.D.N.Y. 2003) .................................................................... 14

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ................................................................................. 7

*Kelen v. World Fin. Network Nat. Bank*,
  302 F.R.D. 56 (S.D.N.Y. 2014) ............................................................................... 11

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) .............................................................................. 25

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 7, 13

*McGlenn v. Driveline Retail Merch., Inc.*,
  No. 18-cv-2097-SEM, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ......................... 13

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................... passim

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................................ 22

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .................................................................................... 18

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ............................................................................ 24

*Schulte v. Fifth Third Bank*,
  805 F.Supp.2d 560 (N.D. Ill. 2011) ........................................................................ 24

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11-cv-8331-CM-MHD, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............ 10

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14-cv-8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ................................ 25

*Theus v. Brinker Int'l, Inc.*,
  No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) ......... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d. Cir. 2005) ............................................................................. 7, 8, 22

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................................................... 21

**RULES**

Fed. R. Civ. P. 23 .......................................................................................................... 22

Fed R. Civ. P. 23(b)(3) .................................................................................................. 21

FED. R. CIV. P. 23(c)(2)(B) ................................................................................. 21, 23

Fed. R. Civ. P. 23(e) ............................................................................................ 1, 2, 21

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 8

FED. R. CIV. P. 23(e)(1)(B) .................................................................................. 21

FED. R. CIV. P. 23(e)(2) ....................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................. 9, 10

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................. 10

FED. R. CIV. P. 23(e)(2)(C) .................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C)(i) .............................................................................. 12

FED. R. CIV. P. 23(e)(2)(D) .................................................................................. 12

Fed. R. Civ. O. 23(e)(3) ...................................................................................... 12

## OTHER AUTHORITIES

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 13:50 (4th ed. 2002) ....... 11, 14

## I.     INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Efsathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin (collectively "Class Representatives"), on behalf of the Settlement Class, respectfully submit this Memorandum of Law in support of their motion requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement dated November 27, 2024 (Doc. 49-1) and for final certification of the Settlement Class.

If approved, the Settlement will successfully resolve the claims of 45,798 individuals nationwide who were notified of a data security incident that was discovered on or around May 8, 2024 (the "Data Breach"). Defendant will establish a non-reversionary common fund of $990,000.00 (the "Settlement Fund") from which each Settlement Class Member can claim up to $10,000.00 for documented monetary losses, two years of three-bureau Credit Monitoring (which includes dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services), and also a pro rata cash payment (estimated to be $100). Additionally, California Settlement Class Members can claim an additional $100.00 cash payment (subject to *pro rata* decrease) for their potential statutory claims. Furthermore, the Settlement Fund will pay for Plaintiffs' Service Awards, attorneys' fees, litigation expenses, and the costs of Settlement Administration. The Settlement also provides sweeping injunctive relief whereby Defendant agrees to implement enhanced data security measures (to the extent not already adopted)—including automated vulnerability scanning tools, enhanced existing firewall protections, enhanced existing multi-factor authentication processes, and improved employee training programs. Critically, Defendant will pay for these data security measures ***separate and apart*** from all other settlement benefits.

1

On December 13, 2024, the Parties filed a Motion for Preliminary Approval. Doc. 49. On December 18, 2024, the Court issued an order directing the Parties to file supplemental briefs addressing whether, among other things, the Plaintiffs have standing. Doc. 50. On January 9, 2025, Plaintiffs filed a Supplemental Memorandum of Law in Support of Their Unopposed Motion for Preliminary Approval. Doc 51. And, on January 16, 2025, Defendant filed a Memorandum of Law in Response to Plaintiffs' Supplemental Briefing on Motion for Preliminary Approval. Doc. 52. On January 28, 2025, the Court issued an Order directing Plaintiffs to file either a declaration addressing the potential for fraud or identity theft resulting from the Data Breach or a supplemental brief addressing why such a declaration should not be required. Doc. 55. On February 4, 2025, Plaintiffs filed a second Supplemental Memorandum of Law in Support of their Unopposed Motion. Doc. 56. On February 19, 2025, the Court issued an Order granting Preliminary Approval. Doc 59.

Since this Court entered the Preliminary Approval Order, the Parties, in conjunction with the Settlement Administrator, have effectuated Class notice consistent with the Settlement and Preliminary Approval Order. The Notice Program was highly effective, with a "reach rate" of 97.05%. *See* **Exhibit A**, Declaration of Elena McFarland of Eisner Advisory Group, LLC ("EAG Decl.") ¶ 14. The effectiveness of the Notice Program is also demonstrated by the positive reaction of Settlement Class Members to the Settlement. Of the 44,375 potential Class Members who received Notice, 5,386 valid Settlement Class Members submitted claims (*i.e.,* 11.78% of the Settlement Class). *Id.* ¶ 15, Table 2. Conversely, only two (2) have requested exclusion and only one (1) has objected.

For the reasons detailed below, Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23(e). The terms of the

Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this Circuit and elsewhere. After all, the Settlement provides the exact relief sought by the lawsuit (*i.e.*, both monetary and injunctive relief). Plaintiffs request the Court enter an order: (1) granting final certification to the Settlement Class and affirming the appoints of Class Counsel and Class Representative; (2) finally approving the Settlement; (3) granting Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives, (Doc. 59); (4) entering a final judgment dismissing this case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs respectfully refer the Court to their incorporated Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval (Doc. 49) and their Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives (Doc. 60) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiffs highlight the following:

Defendant Christie's is an international auction house that operates in the global art and luxury market and is known for hosting auctions and private sales. As part of its business, Defendant collects and maintains certain private information of its customers and prospective customers, including their names, addresses, dates of birth, nationality information, passport numbers, and driver's licenses or state identification numbers ("Private Information"). On or around May 8, 2024, Defendant discovered suspicious activity on its computer network (, *i.e.*, the Data Breach). Defendant determined that certain Private Information of its customers and prospective customers had been unlawfully accessed and exfiltrated. On or around May 30, 2024, Defendant began notifying individuals who may have been impacted by the Data Breach.

Plaintiffs subsequently filed putative class actions before this Court, and those actions were then consolidated. In or around the beginning of October 2024, the Parties began discussing the possibility of settlement. A mediation session was scheduled with Jill R. Sperber, Esq., of Judicate West, who has substantial experience in mediating data breach class actions. Prior to mediation, the Parties engaged in informal discovery and exchanged mediation briefs, which enabled the Parties to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses.

On October 30, 2024, the Parties engaged in a full day mediation session with Ms. Sperber. The Parties engaged in hours of hard-fought negotiations and ultimately agreed upon the material terms of the Settlement. Thereafter, the Plaintiffs moved for preliminary approval of the settlement, which the Court granted after two rounds of supplemental briefing. Notice then issued to the Settlement Class.

## III.    SUMMARY OF SETTLEMENT

### A.  Settlement Benefits

The Settlement provides Class Members with timely benefits targeted at remediating specific harms they may have suffered because of the Data Breach. S.A. ¶¶ 71-73. The Settlement established a non-revisionary common fund of nine-hundred and ninety thousand dollars ($990,000.00). *Id.* ¶ 67. Under the Settlement, Settlement Class Members can obtain (1) cash compensation for documented monetary losses up to $10,000.00 per Settlement Class Member, (2) *pro rata* cash payments (estimated at $100.00), and (3) credit monitoring and identity theft restoration services. *Id.* ¶ 71. California Settlement Class Members can obtain an additional *pro rata* cash payment of $100.00 given their potential statutory claims under the California Consumer Privacy Act. *Id.* Critically, these forms of relief are not mutually exclusive (*e.g.,* a Settlement Class Member may claim cash compensation for monetary losses and a pro rata cash payment and credit monitoring). *Id.* Furthermore, the Settlement provides injunctive relief as detailed below. *Id.* ¶ 73.

### 1. Documented Monetary Losses

Settlement Class Members can obtain up to $10,000.00 per person for documented monetary losses reasonably related to the Data Breach or to mitigating the effects of the Data Breach. *Id.* ¶ 71(a). For example, Settlement Class Members can obtain up to $10,000.00 per person for, *inter alia*, (i) out-of-pocket credit monitoring costs that were incurred on or after May 8, 2024, through the date of Claim submission; (ii) unreimbursed losses associated with actual fraud or identity theft; and (iii) unreimbursed bank fees, long distance phone charges, postage, or gasoline for local travel. *Id.*

### 2. Pro Rata Cash Payments

Settlement Class Members can also obtain a *pro rata* cash payment in the estimated amount of $100.00. *Id.* ¶ 71(b). The precise value of the *pro rata* cash payments will be adjusted upwards or downwards based upon the number of valid claims filed and the funds remaining in the Settlement Fund. *Id.* California Settlement Class Members can obtain an additional cash payment of $100.00 (a "California Statutory Payment") given their potential statutory claims under the California Consumer Privacy Act. *Id.* ¶ 71(c).

### 3. Credit Monitoring

Settlement Class Members can also obtain two years of three-bureau Credit Monitoring that also includes dark web monitoring, identity theft insurance coverage for up to $1,000,000 and fully managed identity recovery services. *Id.* ¶ 71(d).

### 4. Injunctive Relief

The Settlement also provides injunctive relief whereby Defendant agrees to implement enhanced data security measures to the extent not already done. *Id.* ¶ 73. Specifically the Settlement mandates that Defendant (a) periodically review and revise its policies and procedures addressing data security as reasonably necessary; (b) implement automated vulnerability scanning

tools that covers its systems and will set policies for prompt remediation; (c) enhance existing firewall protections; (d) enhance existing multi-factor authentication processes for remote access; (e) verify that all default passwords are changed to follow password policies that comply with best practices; and (f) maintain a program to educate and train its employees on the importance of the privacy and security of Private Information. *Id*. Critically, Defendant will pay for these enhanced date security measures separate and apart from other benefits under the Settlement. *Id.*

### B. Attorneys' Fees and Service Awards

The Parties did not negotiate attorneys' fees, costs, and service awards until after all material terms of the Settlement were agreed upon. *Id.* ¶ 108. In doing so, Class Counsel and Plaintiffs avoided conflicts with the Settlement Class. By way of a previously filed motion (Doc. 60), Class Counsel seek an award of attorneys' fees of one-third (approximately 33.33%) of the Settlement Fund plus the reimbursement of $15,278.00 in reasonable litigation expenses. Additionally, Class Counsel requests service awards of $5,000.00 for each Class Representative.

### C. Preliminary Approval, Notice, and Claims

On February 19, 2025, the Court preliminarily approved the Settlement. (Doc. 58). Consistent with the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 45,726 potential members of the Settlement Class via U.S. mail. *See* EAG Decl. ¶ 14, Table 1. Notice was also provided via a settlement website. *Id.* ¶ 11.

Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and receive no monetary payment from the Settlement. (Doc. 51-2). The deadline for Class Members to exclude themselves or object to the proposed Settlement

was May 15, 2025, and only 2 exclusion requests and one objection were received. *Id.* ¶¶ 16-17. The claim deadline was June 19, 2025, and approximately 5,386 valid Settlement Class Members submitted claims (*i.e.*, 11.78% of the Settlement Class). *Id.* ¶ 15.

## IV.    ARGUMENT

### A.  The Settlement Meets the Standards for Final Approval Under Rule 23(e)

Rule 23(e) requires judicial approval for any compromise or settlement of class action claims. "A court may approve a proposed class action settlement, provided it determines that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quoting *, Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). Such approval "is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'" *Hart v. RCI Hospital Holdings, Inc.*, No. 09-cv-3043-PAE, 2015 WL 5577713, at 6 (S.D.N.Y. Sept. 22, 2015)), quoting *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (citation omitted); *accord Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002). The Second Circuit has noted that the policy favoring settlement is strong, "particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005). Moreover, absent fraud or collusion, the Court "should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132-CM-GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

In undertaking the Rule 23(e) evaluation, a court must consider "both the settlement's terms and the negotiating process leading to the settlement" and review the settlement for both procedural and substantive fairness. *Meredith*, 87 F. Supp. 3d at 662 (quoting *Wal-Mart Stores*,

396 F.3d at 116). In making the determination of whether the settlement is "fair, reasonable, and adequate," amended Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Consistent with this guidance, courts in the Second Circuit have long considered the factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating the adequacy of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (noting "factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors").

At the preliminary approval stage, the Court determined "further to Federal Rule of Civil Procedure 23(e)(1), that the provision of notice is justified and warranted because the Court further finds that it will likely be able to approve the proposed Settlement as fair, reasonable and adequate. Doc. 58., ¶ 4. The Court's conclusion regarding the fairness, reasonableness, and adequacy applies equally now.

### 1. *Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class in this Action*

In determining whether to approve a class action settlement, the Court should first consider whether Class Representatives and Class Counsel "have adequately represented the class." Rule 23(e)(2)(A); *see generally In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) ("Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."). As other judges of this Court have held, "[a] presumption of fairness may attach to a proposed settlement when the terms of that settlement were reached by experienced counsel during arm's-length negotiations undertaken after meaningful discovery." *Meredith*, 87 F. Supp. 3d at 662. Counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* ECF Nos. 27, 27-1, and 27-2. Moreover, they have put their collective experience to use in negotiating a settlement that guarantees immediate relief to class members.

Class Representatives' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Breach. Class Representatives' and Settlement Class Members' data was all allegedly compromised in the same manner. Under the terms of the Settlement Agreement, Class Representatives and Settlement Class Members are all eligible for credit monitoring services and monetary relief from the Settlement Fund. Moreover, each of their data will continue to be safeguarded in the future by the enhancements to security protections Defendant has put into place. Class Representatives have an interest in obtaining the largest possible recovery from Defendant. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiffs

have maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Doc. 60-1 (Joint Decl.) ¶ 28; *see also* Docs. 51-3 through 51-7 (Plaintiff Declarations). Plaintiffs do not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Likewise, Class Counsel have also "adequately represented the class." Rule 23(e)(2)(A). Class Counsel have extensive class action, consumer and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the Settlement Class. Doc. 49-2 (Joint Decl. in Support of Motion for Preliminary Approval); *see In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co*., No. 11-cv-8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Class Counsel was fully informed about the facts, risks, and challenges of this novel action and had a sufficient basis on which to negotiate a very significant settlement.

### 2. The Settlement Was Negotiated at Arm's Length and Aided by a Respected and Experienced Mediator

The Court should next consider whether the settlement was "negotiated at arm's length." Rule 23(e)(2)(B). This includes consideration of other related circumstances to ensure the procedural fairness of a settlement, including whether there was sufficient discovery prior to settlement. *See Meredith*, 87 F. Supp. 3d at 662; *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("When a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a

presumption of fairness, adequacy, and reasonableness.") (cleaned up). To assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *See In re GSE Bonds*, 414 F. Supp. 3d at 699.

Soon after Plaintiffs filed their Consolidated Class Action Complaint, and recognizing the benefits of early resolution, the Parties began discussing the possibility of settlement in or around the beginning of October 2024. S.A. ¶ 10. The Parties scheduled a mediation session with Jill R. Sperber, Esq., who has substantial experience in mediating data breach class actions. Id. Prior to mediation, the Parties engaged in informal discovery and exchanged mediation briefs—which enabled the Parties to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. *Id.* ¶ 11. On October 30, 2024, the Parties engaged in a full-day mediation session with Ms. Sperber. *Id*. Under her guidance, the Parties engaged in hours of hard-fought negotiations and ultimately agreed upon the material terms of the Settlement. *Id*. ¶ 12.

The fact that the proposed settlement reflects a successful mediation further supports a finding of procedural fairness. *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (the involvement of an experienced and qualified mediator in settlement negotiations further affirms the fairness of the process); *see also Belton v. GE Capital Consumer Lending, Inc.*, No. 21-cv-9493-CM, 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (mediation session with a "highly regarded mediator" satisfied the court's inquiry into the thoroughness of the negotiations); *see also* 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 13:50 (4th ed. 2002).

### 3.  *The Relief Provided for the Class Is Adequate*

Courts consider whether the relief provided for the class is adequate in order to assess substantive fairness. To undertake this analysis, courts account for the following factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).

### a. The Relief Provided is Superior to Continued Litigation

Rule 23(e)(2)(C)(i) and the first *Grinnell* factor support final approval, as courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). As this Court has found, the greater the "complexity, expense and likely duration of the litigation," the stronger the basis for approving a settlement. *Meredith*, 87 F. Supp. 3d at 663; *see also In re JPMorgan Treasury Spoofing Litig.*, No. 1:20-cv-03515-PAE, Fairness Hearing Transcript, (S.D.N.Y. May 31, 2022) ("*Treasury Spoofing*") at 19. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

The costs, risks, and delay of trial and appeal are significant in all data security cases, but particularly in cases involving facts such as these. While Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See*

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097-SEM, 2021 WL 165121, at *11 (C.D. Ill. Jan. 19, 2021); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). In fact, this District has recognized that the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated." *In re GSE Bonds*, 414 F. Supp. 3d at 694; *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk.

### b.  The Reaction of the Settlement Class

"A positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith*, 87 F. Supp. 3d at 663; *Treasury Spoofing* at 19-20. The class's reaction to a proposed settlement is an important factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Meredith*, 87 F. Supp. 3d at 663; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (citation omitted)); *Grinnell*, 495 F.2d at 462-63. That being said, "[a] certain number of objections are to be expected in a class action like this one with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative

of the adequacy of the settlement." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 511 (E.D.N.Y. 2003) (quoting NEWBERG § 11.41, at 108 (holding that the "extremely small number of objectors—a mere 18 out of approximately five million Class members—weighs heavily in favor of final approval.")); *see also, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that "[t]he District Court properly concluded that this small number of objections [18 where 27,883 notices were sent] weighed in favor of the settlement"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) ("Of the 11,800,514 class members, only 127 opted out and 24 objected. Such a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class."); *Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 190 (S.D.N.Y. 2012) (approving settlement in a RICO action as "fair, reasonable, and adequate to the class as a whole" where 26,000 tenants received the notice and 118 written objections were received, 141 elected to opt out, there was strident opposition from those who did object and the six named plaintiffs and class representatives did not support the settlement), *aff'd sub nom, Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). *Cf. In re Countrywide Financial Corp Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2010 WL 3341200, at *7 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement with 17 million class members, 2,943 opt outs and 89 objections). Here, the notice campaign resulted in 45,563 notices mailed directly to potential Class Members and notice via an internet website.

The reaction of Class Members to the Settlement has been overwhelmingly positive and weighs in favor of approval. The deadline to opt out of or object to the settlement was May 15, 2025. Of the 44,375 potential Class Members who received Notice, only two (2) have requested exclusion and only one (1) has objected. Conversely, 5,386 valid Settlement Class Members submitted claims (*i.e.*, 11.78% of the Settlement Class). These numbers suggest that the

overwhelming majority of Class Members are satisfied with the Settlement, weighing strongly in favor of approval of the Settlement. *See Charron*, 874 F. Supp. 2d at 198 ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it.").

### c.    Stage of the Proceedings and Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814, at *7 (S.D.N.Y. Sept. 9, 2015). While the case is early in litigation, the Parties' negotiations included an exchange of information sufficient to allow both Parties to assess the claims and defenses at issue. Prior to mediation, the Parties engaged in informal discovery and exchanged mediation briefs—which enabled the Parties to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. S.A. ¶ 11. Early settlement where, as here, the Parties are adequately informed to negotiate is to be commended. *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

### d.    The Risks of Continued Litigation

In assessing the fairness, reasonableness, and adequacy of a settlement, a court should also consider "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463. "[T]he Court [is not

15

required] to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36-37 (E.D.N.Y. 2019).

In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y 2015). Here, the risk of establishing liability and damages is substantial. Prior to the settlement, Defendant twice sought dismissal of this case in its entirety. Docs. 40 and 44. If the action had continued past a motion to dismiss, Plaintiffs would have moved for certification of the class. While Plaintiffs and Class Counsel believe that the Action is appropriate for class treatment, the outcome of a contested motion and future appeals of a certification order via Rule 23(f) are far from certain.

To emphasize this point, the Court need only look at two very high profile data breach cases: *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR (M.D. Fla.) *and In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879 (D. Md.). In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance and causation. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and

remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification on negligence claim on remand); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes and remanding), *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023) (recertifying class on remand), *Maldini v. Marriott Int'l, Inc.*, No. 24-1064, 2025 WL 1560372, at *1 (4th Cir. June 3, 2025) (reversing certification a second time).

The Settlement avoids any uncertainty with respect to this issue. The risks of continued litigation here are at the highest level and there is a genuine possibility that Plaintiffs could have failed to establish liability, damages and class certification through summary judgment and trial. These risks all support the approval of a settlement ending this litigation. *See Meredith*, 87 F. Supp. 3d at 664-65; *Giant Interactive*, 279 F.R.D. at 162.

      **e.**   **The Ability of Defendant to Withstand Greater Judgment**

The financial obligation the Settlement imposes on Defendant is substantial. While Defendant could withstand a greater judgment than the amount paid in settlement, "'[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d at 665) and *Giant Interactive*, 279 F.R.D. at 162 (quoting *In re*

*Sony SCRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173-RPP, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)). The possibility that Defendant could have sustained a greater judgment is not determinative of substantive fairness or unfairness, "'where, as here, other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'" *Meredith*, 87 F. Supp. 3d at 665 and *Giant Interactive*, 279 F.R.D. at 162. As a matter of law, the ability to withstand a greater judgment does not "standing alone … suggest that settlement is unfair." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (citations omitted)).

### f. The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eighth and ninth *Grinnell* factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of approving the Settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Treasury Spoofing* at 25 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). As this Court has noted, the adequacy of the amount achieved in the settlement should not be judged on the best of all possible worlds, but rather in light of the strengths and weaknesses of the case. *Meredith*, 87 F. Supp. 3d at 665-66.

The Settlement here is well within the range of reasonableness in light of the risks presented by this litigation. The gravamen of the litigation is Plaintiffs' contention that Defendant violated its duty to Plaintiffs and the Class by failing to undertake reasonable security measures, leading to the exposure of their personal information. The remediation measures to be continued by Defendant will prevent and mitigate further harm. Furthermore, the cash compensation to which

eligible Class Members will be entitled is significant relative to economic damages incurred. Notably, out of this Settlement Class of over 45,000, only 37 Settlement Class Members filed claims for Documented Monetary Losses, and only four (4) of those claims have been even partially approved to date. EAG Decl. ¶ 15, Table 3. In short, further litigation against Defendant would be time-consuming, expensive, and, given the risks associated with data privacy cases in general and this case specifically, might not result in a greater benefit to the Settlement Class than that provided by the Settlement.

### g.    The Remaining Rule 23(e)(2) Factors Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Rule 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval of the Settlement.

*First*, the proposed method of claims processing ensures equitable treatment of Settlement Class Members. *See* Rule 23(e)(2)(C)(ii) & (e)(2)(D). The Net Settlement Fund will be allocated to Settlement Class Members who submit valid Claim Forms. The Court-approved Settlement Administrator, EAG, has been reviewing and processing all Claim Forms received, will provide claimants with an opportunity to cure any deficiency in their submissions, and will distribute funds to eligible Settlement Class Members. *See generally* EAG Decl.. Importantly, none of the Settlement proceeds will revert to Defendant.  No other agreement was made in connection with the proposed Settlement.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees, including the timing of any such Court-approved payments. *See* Rule 23(e)(2)(C)(iii). As discussed in their Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards to the Class Representatives, (Doc. 61), the requested fee, to be paid only upon the Court's approval, is reasonable in light of the efforts devoted by Plaintiffs' Counsel, the very favorable recovery obtained for the Settlement Class, and the significant risks Settlement Class Counsel shouldered at every step. The requested fee is also in line with attorneys' fee percentages awarded to counsel in other comparable class action settlements in this Circuit. *See Meredith Corp.*, 87 F. Supp. 3d at 668 (noting "in numerous common fund cases, fees have been awarded that represent one-third of the settlement fund" and collecting cases).

For the reasons set forth above, the Settlement is fair, reasonable, and adequate when evaluated under any standard or set of factors and, therefore, warrants the Court's final approval.

## B.  The Court Should Certify the Settlement Class

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith*, 87 F. Supp. 3d at 658 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). When the Court preliminarily approved the Settlement, it found that the Settlement Class preliminarily satisfied the requirements of Rules 23(a) and (b)(3). (Doc. 58, ¶ 3). There have been no changes that would undermine the Court's initial determination. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

For the same reasons previously argued (Doc. 49), the Court should grant final certification of the Class for purposes of the Settlement. Bolstering Class Representatives' earlier arguments in support of certification of the Settlement Class is the fact that Notices were sent to 45,726 potential Class Members. *See* EAG Decl. ¶ 14. Thus, the size of the potential Class easily satisfies the numerosity requirement under Rule 23(a).

The adequacy requirement of Rule 23(a)(4) involves an inquiry as to whether: (1) the plaintiffs' interests are antagonistic to the interests of the other members of the Class; and (2) plaintiffs' counsel are qualified, experienced, and capable of conducting the litigation. As this Court found in *Giant Interactive*, the very small number of objectors and opt outs, as well as the above-average recovery in this case compared to other data breach cases, supports the Court finding the answers to these questions are no and yes, respectively. *Giant Interactive*, 279 F.R.D. at 159. "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).

Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

### C.  Notice To the Settlement Class Satisfied Rule 23 and Due Process

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). The standard for the adequacy of notice to the class is reasonableness. FED. R. CIV. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must

'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. CAFA notice was timely sent in accordance with the statute. EAG Decl. ¶ 5. Direct mail notice was sent by EAG, and after all remailings reached 97.05% of the Settlement Class Members. *Id*. ¶¶ 7-9, 14. This meets and exceeds the 70% threshold for satisfying due process articulated in the Federal Judicial Center Guidelines and the requirements of Rule 23. *Id*.¶ 14. Direct notice was supplemented with the Settlement website, post office box, dedicated toll-free hotline, and email support. The robust 11.78% claims rate is evidence of the effectiveness of the Notice Plan.

The Notice Plan, as well as the mailed notice and website notice, satisfy due process. *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830-JPO, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 319 (1950). The mailed notice and website notice are written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart*, 396 F.3d at 114. Settlement Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. The Class Notice fully advised Class Members of the binding effect of the judgment on them. (Doc. 51-2).

The content disseminated through this Notice campaign was more than adequate. *See Hall v. ProSource Techs., LLC*, No. 14-cv-2502-SIL, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016)

(finding notice sufficient where it "described essential and relevant information in plain terms, including . . . the terms of the Settlement Agreement . . . and the various rights of potential class members, such as the right to opt out of the Settlement Class or object to the instant Final Approval Motion").

In sum, this individual first-class mail to Class Members who could be identified with reasonable effort and publication on an internet website was "the best notice that is practicable under the circumstances." Rule 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 and 12-cv-5822-NRB, 2020 WL 6290596, at *3 (S.D.N.Y. Oct. 27, 2020).

### D. The lone objection lacks merit and should be overruled.

Only one class member filed an objection to the Settlement. That objection is attached to the EAG Declaration as Exhibit F. The hand-written objection states: "The grounds for my objection are that the potential risk for identity theft which could lead to financial losses that far exceed the Settlement offer." See EAG Decl. Ex. F. The objection contains three fatal flaws.

First, as the Court is aware from its own questions in connection with preliminary approval, there was a question about whether the data compromised in the Data Incident would be sensitive enough to create a high risk of costly identity theft, including in comparison to other sets of data elements that could be compromised. *See* Doc. 55.

Second, Class Counsel obtained a settlement on behalf of the Settlement Class that provides excellent benefits and a large, non-reversionary settlement fund that is superior to many other data breach settlements that have been finally approved. The "per person" amount of this Settlement is $21.61 ($990,000 divided by 45,798). This is far greater than the per person recovery in a number of finally approved data breach settlements with similar sized classes where Social Security numbers were involved, including for example the following:

A. *In re Mondelez Data Breach Litigation,* Master File No.: 1:23-cv-03999 (N.D. Ill.) $750,000 common fund for 53,000 class members, $14.15 per person

B. *Henrix v. Marshall & Melhorn*, No. 3:23-cv-1181 (N.D. Ohio) $800,000 common fund for 47,000 class members, $17.02 per person

C. *Lutz v. Electromed, Inc*.  No. 21-cv-2198-KMM-DTS (D. Minn.) $825,000 common fund for 47,000 class member, $17.55 per person

D. *May v. Five Guys Enters., LLC*, No. 1:23-cv-00029-CMH-JFA (E.D. Va.) $700,000 common fund for 37,922 class members, $18.46 per person

Third, the Objection is "tantamount to complaining that the settlement should be better, which is *not a valid objection*." *Browning v. Yahoo! Inc*., No. 04-cv-01463, 2007 WL 4105971, *5 (N.D. Cal. Nov. 16, 2007) (emphasis added) (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998)); *see also In re Equifax Inc. Customer Data Sec. Breach Litig*, No. 17-nd-2800, 2020 WL 256132, *15 (N.D. Ga. Mar. 17, 2020) at *15 ("Objections that the settlement fund is too small for the class size, or that [the defendant] should be required to pay more, do not take into account the risks and realities of litigation, and are not a basis for rejecting the settlement."); *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 595 (N.D. Ill. 2011) (same).

Any class action settlement—no matter how well negotiated and no matter how generous to the settling class—can be criticized as "inadequate." No settlement is immune from a complaint that "it is not enough" or "it should be better." It is not possible for a settlement of this size and scope to satisfy each and every Class Member. To the extent that Class Members like the Objector here are unhappy with the relief provided and believe that they are entitled to additional compensation, they were provided an opportunity to simply opt out of the Settlement and pursue claims individually. *Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 700 (S.D. Fla. 2014) ("[T]o the extent that these objectors believe that they are entitled to additional relief due to unique cases, they were entitled to opt out of the settlement.").

24

The Objector's final argument is thus nothing more than a complaint that this settlement amount is not enough. The solution for this Objector, however, was to opt out, as arguing a settlement is "not enough" is not a valid basis for an objection. *See, e.g. In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (overruling twenty-eight (28) objections that claimed "the Settlement is too low or otherwise insufficient" and stating "the positive response from the Class favors approval of the Settlement."); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14-cv-8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling various objectors because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suit"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 497 (N.D. Ill. 2015) (overruling twenty (20) objections that claimed the settlement was inadequate because "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

The lone objection lacks merit and should be overruled, particularly in light of the overwhelmingly positive response to this Settlement from the remainder of the Class.

## V.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant benefits in the form of monetary compensation, credit monitoring, and equitable relief. Based on the above reasons, Plaintiffs respectfully request that the Court enter an order granting final approval to the Settlement: (a) certifying the Settlement Class; (b) appointing Efsathios Maroulis, William Colley, Russell DeJulio, Alice Bruce, and Ildar Gaifullin as Settlement Class Representatives; (c) appointing David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and Jonathan S. Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C. as Class Counsel; and (d) awarding one-third (33.33%) of the Common Fund, or $330,000.00 as attorneys' fees, approving reimbursement of expenses in the amount of

$15,278.13; and approving Service Awards of $5,000.00 each ($25,000.00 total) for the Class Representatives.

Date: July 8, 2025                          Respectfully submitted,

                                            */s/ David K. Lietz*
                                            David K. Lietz
                                            **MILBERG COLEMAN BRYSON PHILLIPS
                                            GROSSMAN, PLLC**
                                            5335 Wisconsin Avenue NW, Suite 440
                                            Washington, D.C. 20015-2052
                                            Tel.: (866) 252-0878
                                            dlietz@milberg.com

                                            Jonathan S. Mann
                                            **PITTMAN, DUTTON, HELLUMS, BRADLEY
                                            & MANN, P.C.**
                                            2001 Park Place North, Suite 1100
                                            Birmingham, AL 35203
                                            Tel.: (205) 322-8880
                                            jonm@pittmandutton.com

                                            *Class Counsel and Counsel for Plaintiffs*